**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MEDTRONIC XOMED, INC.,

    Plaintiff/Counterdefendant,

vs.                                                  Case No. 3:04-cv-400-J-32MCR

GYRUS ENT LLC,

    Defendant/Counterclaimant

---

## **ORDER**[1]

Before the Court are the parties' motions to bifurcate the trial in this patent infringement case involving a method of performing sinus surgery and a sinus debrider instrument, U.S. Patent No. 6,293,957 ("'957 Patent"). Each party requests a different configuration of the proceedings. Defendant's Motion to Bifurcate, filed by defendant/counterclaimant Gyrus ENT LLC, ("Gyrus"), requests the Court bifurcate the trial as to liability and damages. (Doc. 194.) Plaintiff/counterdefendant Medtronic Xomed, Inc. ("Xomed") has filed a Motion To Bifurcate The Issue Of Inequitable Conduct. (Doc. 195.) In addition to the aforesaid motions, the Court has considered

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

1

the parties' responses and supplementation, (Docs. 200, 201, 210, 213-2, 215), and oral argument on the motions held on May 25, 2006.  (Docs. 202, 203, 212.)

**I.      The Bifurcation Standard**

Rule 42(b), Federal Rules of Civil Procedure, permits a court to order a separate trial of any claim or any separate issue or issues.  While a number of factors and considerations aid the Court in its decision,[2] "the paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefits and prejudice."  Kimberly-Clark Corp. v. James River Corp. of Va., 131 F.R.D. 607, 608 (N.D.Ga. 1989).

The decision whether to bifurcate Gyrus' defense and counterclaim seeking a

---

[2]    These factors have been described as follows:

> In addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

Kimberly-Clark Corp. v. James River Corp. of Va., 131 F.R.D. 607, 608-09 (N.D.Ga. 1989).

declaration that the '957 Patent at issue here is unenforceable, "clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction, i.e., patent law," and is governed by the decisions of that court. Gardco Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987). "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." Gardco Manufacturing, Inc., 820 F.2d at 1212.

Because bifurcation of liability and damages is not unique to patent law, the law of the Eleventh Circuit applies to this issue. See Wexell v. Komar Industries, Inc., 18 F.3d 916, 919 (Fed. Cir. 1994)("[t]his court applies the law of the pertinent regional circuit when the precise issue to be addressed involves an interpretation of the Federal Rules of Civil Procedure"). Consistent with the Federal Circuit, the Eleventh Circuit recognizes that Rule 42(b) "confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.'" Harrington v. Cleburne County Bd. of Educ., 251 F.3d 935, 938 (11th Cir. 2001). Rule 42(b) "affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001).

## II. **Bifurcation of the Issue of Inequitable Conduct**

Xomed asks the Court to bifurcate the issue of its alleged inequitable conduct raised by Gyrus' unenforceability affirmative defense and counterclaim for consideration by the Court *after* the conclusion of the jury trial on infringement, validity and damages. (Doc. 195 at 5.)  Because the issue of inequitable conduct is decided by the Court in equity, "the inflammatory nature of the evidence has no purpose in being put in front of the jury, " argues Xomed.  (Docs. 203 at 97, 212.)

Xomed asserts that to establish Xomed's alleged inequitable conduct, Gyrus will present testimony and evidence relating to Xomed's failure to disclose to the U.S. Patent and Trademark Office ("PTO") prior art, the so-called "Hummer" sinus debrider, and failure to name consultant Bob Mericle as an inventor of the '957 Patent.  (Doc. 195 at 5, 11-13.)  Xomed acknowledges that these factual determinations related to inequitable conduct overlap with factual determinations the jury will be asked to make in connection with Gyrus' invalidity defenses and counterclaim.  (Doc. 195 at 11-13.)  It is for this reason, contends Xomed, that the Court should take evidence  solely relevant to the inequitable conduct issue *after* the jury has concluded its duties.

Gyrus opposes bifurcation of the inequitable conduct issue because there is significant overlap of evidence concerning invalidity and inequitable conduct.  (Doc. 200 at 7-15.)   Alternatively, Gyrus argues that if the inequitable conduct issue is bifurcated, the bench trial on inequitable conduct should be tried first, prior to the jury

4

trial on infringement and invalidity.  (Docs. 200 at 17; 210 at 2 (citing Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366 (Fed. Cir. 2006); Gardco Manufacturing, Inc., 820 F.2d at 1213).)

"The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide." Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993).  To prove that the '957 Patent is unenforceable because of Xomed's inequitable conduct, Gyrus must prove by clear and convincing evidence that (1) the withheld prior art was material to the PTO's patent decision; (2) Xomed knew of the prior art and its materiality; and (3) Xomed's failure to disclose the prior art was a result of an intent to mislead the PTO. Elk Corp. of Dallas v. GAF Bldg. Materials Corp., 168 F.3d 28, 30 (Fed. Cir. 1999).

Evidence concerning the Hummer prior art and whether it is cumulative of the prior art disclosed by Xomed to the PTO, as well as whether Mericle was an inventor, relevant to both the materiality and intent elements of the inequitable conduct defense and claim, is the same or entwined with evidence relevant to both infringement claims and defenses and counterclaim, which must be presented to the jury.  (See Docs. 161-2 at 26-32;  170 at 23-34 and 35-44; 187 at 14).  Additional evidence, if any, regarding Xomed's alleged intent to deceive not relevant to the invalidity defenses would appear to be relatively sparse indeed.  Xomed has not identified any additional witnesses or exhibits relevant to the issue of inequitable conduct that will not be

5

presented or are not relevant to the liability and invalidity issues before the jury. For this reason, the Court finds that a separate bench trial of this single issue either before or after the jury trial would not be the most efficient use of judicial resources, and could require re-calling witnesses who will or had testified at the jury trial. "Judicial economy would not result from the proposed bifurcation because of the overlapping evidence and testimony that will be heard in both defenses questioning the enforceability and validity of the patent." Precision Shooting Equipment, Inc. v. Golden Eagle Industries, LLC, No. 8:00-450CIV-T17TGW, 2005 WL 1669120 at * 2 (M.D. Fla. July 8, 2005). Bifurcation in this case "would not result in an increase of judicial economy and convenience, and is not required to avoid prejudice to either party." Id.

### III. **Bifurcation of Liability and Damages**

"[T]he issues of validity, title, infringement and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties. Swofford v. B&W, Inc., 336 F.2d 406, 415 (5th Cir. 1964).[3] Furthermore, "the issue to be tried must be so distinct and separable from the other that a trial of it alone may be had without injustice." Id. (issue of liability and damages are not interwoven and can be submitted to jury

---

[3]   In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

independently of the other without confusion and uncertainty).

In seeking bifurcation of liability and damages, Gyrus argues that the damages issues involving a determination of reasonable royalty and whether lost profits should be awarded, do not relate to or overlap the liability issues. Gyrus contends "[t]here is little, if any, overlap between the liability and damages issues and evidence. Even if some of the same witnesses testify during the liability and damages trials, their testimony will be directed to different facts and issues in the two trials." (Doc. 194 at 14.)

Gyrus envisions that the Court's claim construction ruling and the liability determination will be appealed before damages, if necessary, are tried. (Doc. 194 at 6, 19.)  As such, it appears that Gyrus initially advocated empaneling separate juries for liability and damages. Accord Swofford v. B&W, Inc., 34 F.R.D. 15, 20 (S.D. Tex. 1963), aff'd, 336 F.2d 406 (5th Cir. 1964). At oral argument, however, counsel for Gyrus suggested that the trial on damages take place "a month or two" after the trial on liability "with the same jury." (Docs. 203 at 141, 212.)

Xomed argues that the complex nature of patent cases does not mandate bifurcation. (Doc. 201 at 10 (citing Home Elevators, Inc. v. Millar Elevator Service Co., 933 F. Supp. 1090 (N.D. Ga. 1996)(proof of royalty and lost profit damages not sufficiently complex to warrant bifurcation of liability and damages in patent case)). According to Xomed, "this case, which involves a single patent consisting of three

claims and involves a market of four competitors, is not such an exceedingly complex patent matter that it mandates bifurcation." (Doc. 201 at 11.)  Xomed proposes that in lieu of bifurcation into two trials, the Court consider structuring the single trial into "phases" tried to the same jury.  (Doc. 201 at 13-14.)

While acknowledging the distinct characteristics of the evidence relevant to liability and to damages, the Court is persuaded to deny in part Gyrus' motion for separate trials, and to conduct a single trial in this case, divided into two phases: liability and damages, all tried to the same jury.  See Belmont Textile Machinery Co. v. Superba, S.A., 48 F. Supp.2d 521, 526 (W.D. N.C. 1999); Xerox Corp. v. 3COM Corp., No.  97-CV-6182T, 1999 U.S. Dist. LEXIS 9976, at *7 (W.D. N.Y. April 20, 1999); Hewlett-Packard Co. v. Genrad, Inc., 882 F. Supp. 1141, 1158 n. 21 (D. Mass. 1995); Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 116 (E.D. La. 1992). Gyrus has established that the issues in this case as to liability and damages are sufficiently complex and so distinct that "one trial on all issues could well perplex the jury. . . . To include at the same time proof of the damages issues could risk needless juror confusion."  Laitram Corp., 791 F. Supp. at 116.  It is preferable to permit the jury to concentrate first on the complicated issues of liability before being asked to consider the additionally complex issues of damages presented by this patent case. See Beauchamp v. Russell, 547 F. Supp. 1191, 1199-1200 (D. Ga. 1982).

At trial, the parties will first try all issues regarding liability. If the defendant is found liable for infringement and the '957 is found to be valid and enforceable, the trial will proceed immediately, before the same jury, to the question of damages. Because it is more efficient to work toward one judgment and one appeal, see Johns Hopkins University v. Cellpro, 160 F.R.D. 30, 35 (D. Del. 1995), judgment will not be entered on the jury's liability verdict until after a trial and verdict on damages, if necessary.

The challenge presented by "phasing" the liability and damages segments of this trial is the logistics of scheduling the proceedings. Neither party has provided the Court with specific details about what evidence they would want to present in connection with damages, or how long that presentation would take. Motions and responses concerning expert testimony inform that at least two experts are anticipated to testify concerning damages. (See Docs. 150, 162-2, 171, 172-1, 185, 188.) There is no indication by either party that any additional witnesses, in addition to those who will be testifying on infringement, validity and enforceability issues, will be called to testify solely on the issue of damages.

The Court assumes that no more than three additional trial days will be necessary for presentation of testimony, evidence, and argument to the jury on the question of damages. This damages phase of the trial will occur, if necessary, immediately following the jury's verdict on liability before the same jury, or as soon thereafter as the Court's calendar permits.

Upon due consideration, and for the forgoing reasons, it is hereby

**ORDERED:**

1. Medtronic Xomed Inc.'s Motion To Bifurcate The Issue Of Inequitable Conduct (Doc. 195) is **DENIED**.

2. Defendant's Motion To Bifurcate The Trial (Doc. 194) is **DENIED IN PART**.

3. A single trial in this case will proceed in two separate and distinct phases, starting on **September 11, 2006**. Liability will first be tried to a verdict, and, if necessary, the trial will proceed immediately thereafter to the damages phase before the same jury.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of August, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record