UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MEDTRONIC XOMED, INC.           )
a Delaware Corporation          )
                                )        Case No.:  3:04CV400-V-32 MCR
            Plaintiff,          )
                                )
    v.                          )
                                )
GYRUS ENT LLC                   )
a Delaware Limited Liability Company  )
                                )
            Defendant.          )
_____

## PLAINTIFF MEDTRONIC XOMED, INC.'S
## PROPOSED JURY INSTRUCTIONS
## AUGUST 24, 2006

TABLE OF CONTENTS

# PLAINTIFF MEDTRONIC XOMED, INC.'S PROPOSED JURY INSTRUCTIONS AUGUST 24, 2006

Page

### *INITIAL INSTRUCTIONS*

BURDENS OF PROOF ............................................................................................... 1

THE PARTIES AND THE NATURE OF THE CASE ............................................... 3

THE PATENT SYSTEM, GENERALLY .................................................................. 4

THE PARTS OF A PATENT ..................................................................................... 5

THE SIGNIFICANCE OF PATENT CLAIMS ......................................................... 6

ISSUES TO BE DECIDED ....................................................................................... 8

XOMED'S CONTENTIONS ..................................................................................... 9

DIRECT INFRINGEMENT ..................................................................................... 10

INDIRECT INFRINGEMENT ................................................................................. 11

DAMAGES ............................................................................................................... 12

WILLFUL INFRINGEMENT .................................................................................. 13

JURY INSTRUCTION NO. 1 - GENERAL ............................................................ 15

JURY INSTRUCTION NO. 2 – DIRECT AND CIRCUMSTANTIAL EVIDENCE ............... 16

JURY INSTRUCTION NO. 3 – WEIGHING EVIDENCE ..................................... 17

JURY INSTRUCTION NO. 4 – CREDIBILITY OF WITNESSES ........................ 18

JURY INSTRUCTION NO. 5 – EXPERT OPINIONS ........................................... 19

JURY INSTRUCTION NO. 9 – PATENTS GENERALLY ..................................... 20

JURY INSTRUCTION NO. 10 – GRANTING OF PATENTS I ............................. 21

JURY INSTRUCTION NO. 11 – GRANTING OF PATENTS II ............................ 22

JURY INSTRUCTION NO. 12 – ISSUES TO BE DECIDED ................................ 23

JURY INSTRUCTION NO. 13 – THE PATENT CLAIMS ..................................... 24

JURY INSTRUCTION NO. 14 – CLAIM CONSTRUCTION GENERALLY ........................ 25

JURY INSTRUCTION NO. 15 – INDEPENDENT AND DEPENDENT CLAIMS ................ 26

JURY INSTRUCTION NO. 15(A) – "COMPRISING" CLAIMS ........................... 27

JURY INSTRUCTION NO. 16 – CLAIM CONSTRUCTION – MEANING OF TERMS ....... 28

JURY INSTRUCTION NO. 17 – THE RIGHT TO EXCLUDE ............................... 31

JURY INSTRUCTION NO. 18 – INDUCEMENT TO INFRINGE I ....................... 32

AT1 30049814.1

# TABLE OF CONTENTS
(continued)

JURY INSTRUCTION NO. 19 – INDUCEMENT TO INFRINGE II ........................................ 33

JURY INSTRUCTION NO. 20 – CONTRIBUTORY INFRINGEMENT I .............................. 34

JURY INSTRUCTION NO. 21 – CONTRIBUTORY INFRINGEMENT II ............................ 35

JURY INSTRUCTION NO. 22 – WILLFUL INFRINGEMENT ............................................. 36

JURY INSTRUCTION NO. 23 – INVALIDITY GENERALLY I ........................................... 37

JURY INSTRUCTION NO. 24 – INVALIDITY GENERALLY II .......................................... 38

JURY INSTRUCTION NO. 25 – PRIOR ART ..................................................................... 39

JURY INSTRUCTION NO. 26 - ANTICIPATION ................................................................. 40

JURY INSTRUCTION NO. 27 – INTERPRETATION SAME FOR INFRINGEMENT
AND INVALIDITY ................................................................................................. 42

JURY INSTRUCTION NO. 28 - DERIVATION ................................................................... 43

JURY INSTRUCTION NO. 29 – CORROBORATION FOR DERIVATION ......................... 44

JURY INSTRUCTION NO. 30 - OBVIOUSNESS ............................................................... 45

JURY INSTRUCTION NO. 31 – SCOPE AND CONTENT OF PRIOR ART ........................ 47

JURY INSTRUCTION NO. 32 – DIFFERENCES BETWEEN INVENTION AND
PRIOR ART ........................................................................................................... 48

JURY INSTRUCTION NO. 33 – LEVEL OF ORDINARY SKILL ...................................... 49

JURY INSTRUCTION NO. 34 – COMBINATION OF PRIOR ART .................................... 50

JURY INSTRUCTION NO. 35 – OBJECTIVE INDICATION OF NONOBVIOUSNESS ...... 51

JURY INSTRUCTION NO. 36 – SIMPLICITY DOES NOT EQUAL OBVIOUSNESS ......... 52

JURY INSTRUCTION NO. 37 – GYRUS'S OBVIOUSNESS CONTENTIONS .................... 53

JURY INSTRUCTION NO. 38 – DAMAGES GENERALLY ............................................... 54

JURY INSTRUCTION NO. 39 – TWO TYPES OF DAMAGES ........................................... 55

JURY INSTRUCTION NO. 40 – LOST PROFIT DAMAGES ............................................... 56

JURY INSTRUCTION NO. 41 – LOST SALES ................................................................... 57

JURY INSTRUCTION NO. 42 – AMOUNT OF LOST PROFITS ........................................ 58

JURY INSTRUCTION NO. 43 – REASONABLE ROYALTY .............................................. 59

JURY INSTRUCTION NO. 44 – AMOUNT OF REASONABLE ROYALTY ....................... 60

JURY INSTRUCTION NO. 45 – REASONABLE CERTAINLY AS TO AMOUNT OF
DAMAGES ............................................................................................................. 62

JURY INSTRUCTION NO. 46 – CONCLUDING INSTRUCTIONS ..................................... 63

# ***INITIAL INSTRUCTIONS***

## **Burdens of Proof**

The term "burden of proof" refers to the obligation of a party to prove certain facts exist by a required weight of evidence. In this case you are faced with two types of burdens of proof, each of which requires a different weight of evidence: (1) proof of a fact by preponderance of evidence, and (2) proof of a fact by clear and convincing evidence. You will be told which burden of proof applies to which facts. You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should therefore, put it out of your minds.

The first standard of proof is proof by preponderance of the evidence. To "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence means such evidence, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proven is more likely true than not true. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proven by a preponderance of the evidence.

In determining whether any fact in issue has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If a preponderance of the evidence does not support each essential element of a claim or defense which must be proven by that burden of proof, then you should find against the party having the burden of proof on that issue.

In this case, Xomed has the burden of proving by a preponderance of the evidence that Gyrus is liable for indirect infringement of the '957 Patent. Xomed also has the burden of proving by a preponderance of the evidence the amount of damages to which it is entitled, assuming Gyrus is liable for infringement.

The second standard of proof is clear and convincing evidence. Clear and convincing evidence involves a greater degree of persuasion than that which will satisfy a preponderance of the evidence standard. When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded that the claim or defense is true. The evidence must be free from serious doubt. Clear and convincing evidence must produce in your mind a firm belief or conviction as to the matter sought to be established. You must be convinced that the fact is indeed true in order to meet the clear and convincing burden.

In determining whether any fact in issue has been proven by clear and convincing evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may

have called them, and all exhibits received in evidence, regardless of who may have produced them.

If clear and convincing evidence does not support each essential element of a claim or defense which must be proven by that burden of proof, then you should find against the party having that burden of proof on that issue.

As I will explain in greater detail later, Gyrus has the burden of establishing by clear and convincing evidence the facts necessary to prove that the claims of the '957 Patent are invalid. Xomed has the burden of establishing by clear and convincing evidence that Gyrus's infringement is willful.

A patent is presumed valid. This presumption of validity continues in effect in favor of the plaintiff unless there is clear and convincing evidence which leads the jury to a different or contrary conclusion.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply. At the end of the trial I will review for you which burden of proof, the preponderance of the evidence standard or the clear and convincing standard, to apply to each issue in this case.

SOURCE:    Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 8-10 (modified to the facts of the case); 4-86 *Modern Federal Jury Instructions-Civil* P. 86-6 (Matthew Bender 3d ed.) (modified); 35 U.S.C. § 282 (2003); *Price v. Symsek*, 988 F.2d 1187, 1190, 1194 (Fed. Cir. 1993); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439-40 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 986 (1988); *Lemelson v. United States*, 752 F.2d 1538, 1547 (Fed. Cir. 1985).

AT1 30049814.1

## The Parties and the Nature of the Case

As I have told you, this is a patent case. It involves U.S. Patent No. 6,293,957. Patents are often referred to by their last three digits. The patent in this case will be referred to as the '957 Patent.

The '957 Patent describes and covers a method of performing sinus surgery. The method described by the '957 Patent includes the use of a medical instrument known as a sinus debrider. During the trial the parties will offer testimony to familiarize you with this technology.

Medtronic Xomed, Inc. which you will likely hear referred to just as "Xomed," is the plaintiff in this case, and contends that the sinus debriders sold by Gyrus ENT, the defendant in this case, are used by sinus surgeons to infringe the '957 Patent. Xomed contends that it is entitled to damages caused by that infringement.

Gyrus denies that it is infringing and contends that the '957 Patent is "invalid" for a number of reasons that I will tell you about shortly.

First I will explain the U.S. patent system, the parts of a patent, and how a person obtains a patent.

SOURCE:     Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 13 (modified); American Intellectual Property Law Association Model Patent Jury Instructions at 1 (modified); Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.1 (modified); First Am. Compl. at 1-2; Answer to Am. Compl. at 1; Revisions incorporated per Gyrus's input.

## The Patent System, Generally

Patents are issued by the United States Patent and Trademark Office, which is part of our government.  The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions.  Inventions that are protected by patents may be of products, compositions, or of methods for doing something, or for using or making a product or composition.

The owner of a patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent.

A patent is granted for a set period of time, which, in this case, is 20 years from the time the application for the '957 Patent was filed.  Once a patent expires, anyone is free to use the invention covered by the patent.

During the term of the patent, however, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent.  The patent owner enforces a patent against persons believed to be infringers in a lawsuit in federal court, such as in this case.

To be entitled to patent protection an invention must be new, useful and nonobvious.  A patent cannot legally take away the right to use that which was already known before the invention was made, or that which was obvious from what was already known.  Thus, a patent will not be valid if it deprives people of the right to use old or known products or processes, or of their right to use products or processes that were obvious at the time the invention was made.  However, things known in a particular field, if combined in a new way and / or combined with something not previously known, can be a patentable invention.  That which was already known at the time of the invention is called the "prior art."  You will hear about the prior art relating to the '957 Patent during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.

SOURCE:     Jury instruction given in *Honeywell, Inc. v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 10-13; American Intellectual Property Law Association Model Jury Instructions, at 1-4 (modified); U.S. Const. Art. I § 8, cl. 8; 35 U.S.C.§ 1 *et. seq.* (2003).

AT1 30049814.1

**The Parts of a Patent**

A patent includes two basic parts: first, a written description of the invention, which may include drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

You have been provided with a copy of the '957 Patent. Please refer to the patent as I identify its different sections.

The cover page of the '957 Patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventors' names, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the '957 Patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are the drawings, which appear as Figures 1 to 19 on the next 5 pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification. The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '957 Patent begins at column 1, line 1, and continues to column 6 line 15. It includes a background section, a summary of the invention, and a description of the invention, including some specific examples.

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts or steps, referred to as "claim limitations." In the '957 Patent, the claims begin at column 6, line 16 and continue to the end of the patent, at column 6, line 65.

SOURCE:     Delaware Uniform Jury Instructions Proposed Preliminary Instruction.

**The Significance of Patent Claims**

In this case, we will be concerned with claims 1-3 of the '957 Patent. Xomed contends that claims 1-3 are infringed. Gyrus contends that claims 1-3 are not infringed, and that they are invalid.

The language of patent claims may not be clear to you, or the parties may dispute its meaning. I will instruct you now about the meaning of some of the claim language. You must use the meanings I give you when you decide the issues of infringement and invalidity.

I instruct you that the term "sinus" as found in the claims of the '957 Patent means "any of various air-filled cavities in the bones of the skull, especially one communicating with the nostrils."

I instruct you that the claim term "distal end" as found in the claims of the '957 Patent means "the end which is remote, or farther from the point of reference, as opposed to proximal."

I instruct you that the claim term "annular space" as found in the claims of the '957 Patent means "the space between the outer tubular member and the inner tubular member is shaped like or forms a ring in the cross section."

I instruct you that the claim term "supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument" as found in the claims of the '957 Patent means "supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument such that fluid remains essentially within the instrument to be removed through the suction passage."

I instruct you that the claim term "deliver fluid to the tissue cutting surface" as found in the claims of the '957 Patent means "to contain fluid being delivered to the tissue cutting surface."

I instruct you that the claim term "sinus surgery" as found in the claims of the '957 Patent means "a surgical operation or procedure involving the removal of tissue from the sinus on which the operation or procedure is being performed."

I instruct you that the claim term "sinus debrider instrument" as found in the claims of the '957 Patent means "A tool used for the surgical cutting and removal of tissue from the sinus on which the operation or procedure is being performed."

I instruct you that the claim term "tissue" as found in the claims of the '957 Patent means "an aggregation of similar cellular matter."

I instruct you that the claim term "fluid passage" as found in the claims of the '957 Patent means "a path, channel, or duct through or along which fluid may pass."

I instruct you that the claim term "operative site within a sinus" as found in the claims of the '957 Patent means "that location within the sinus where the surgical operation is performed."

I instruct you that the claim term "suction passage" as found in the claims of the '957 Patent means "A path, channel, or duct through or along which a fluid and/or solid may pass as a result of a suction force."

I instruct you that the claim term "the inner member is tubular and has an inner lumen therein" as found in the claims of the '957 Patent means "the inner member is a hollow cylinder that has an inner open space or cavity."

I instruct you that the claim term "aspirating the cut tissue through the inner lumen" as found in the claims of the '957 Patent means "removing the cut tissue through the inner open space or cavity by suction."

I instruct you that the claim term "tissue cutting surface" as found in the claims of the '957 Patent means "that portion at the distal end of the inner member of the sinus debrider instrument which performs the tissue cutting function."

SOURCE:    Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.4 (modified); 35 U.S.C. § 271.

**Issues to Be Decided**

I will now give you some information about the issues that will be presented to you at this trial and the law that you must follow in reaching your verdict. At the close of the trial, you will be given a verdict form and questions that you must answer in reaching your verdict. I will then give you more specific instructions to follow.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.

AT1 30049814.1

**Xomed's Contentions**

I will first describe Xomed's contentions to you.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.1.

**Direct Infringement**

As I told you, Xomed contends that when sinus surgeons use Gyrus's accused sinus debriders in sinus surgery, such use infringes claims 1-3 of the '957 Patent. This is called direct infringement. To prove direct infringement, Xomed must prove by a preponderance of the evidence that sinus surgeons use Gyrus's sinus debriders in a manner that infringes each and every limitation of one or more of the '957 Patent claims. While Xomed must prove that use of Gyrus's sinus debriders by doctors directly infringes the '957 Patent, Xomed is not making any claim against sinus surgeons. Xomed's claim is against Gyrus, which Xomed contends is liable for indirect infringement. I will now explain to you the concept of indirect infringement.

Here, the products accused by Xomed are the following Gyrus sinus debrider systems: (1) the ESSential Shaver System; (2) the Enhanced ESSential Shaver System; (3) the Turbo 7000; and, (4) the Diego Powered Dissector System.

SOURCE:      American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.1.1.

AT1 30049814.1

**Indirect Infringement**

Xomed contends that Gyrus indirectly infringes claims 1-3 of the '957 Patent by contributing to or encouraging others—in this case, sinus surgeons—to directly infringe.  There are two types of indirect infringement: inducing infringement and contributory infringement.

To prove that Gyrus induced someone else to infringe the '957 Patent claims, Xomed must prove by a preponderance of the evidence that Gyrus encouraged or instructed another person to use a product in a manner that infringes, and that Gyrus knew or should have known that the encouragement or instructions would likely result in the other person infringing the claims.

To prove contributory infringement of the '957 Patent claims, Xomed must prove by a preponderance of the evidence that Gyrus sold or supplied to another person a component that is a material part of the patented invention and that the component does not have any other substantial noninfringing uses.  Xomed must also prove that use of these products in sinus surgery infringes the '957 Patent claims, and that Gyrus knew that the component was especially made for use in an infringing manner.

SOURCE:      American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.1.2.

AT1 30049814.1

**Damages**

Because you have determined that Gyrus infringes the '957 Patent and that the '957 Patent is valid you must now determine the amount of damages to which Xomed is entitled.

There are two types of damages for patent infringement.

The first type of patent damages is lost profits. Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

The second type of patent damages is called reasonable royalty. I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and that the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

Xomed claims that it has suffered damages as a result of Gyrus's infringement in the form of lost profits that Xomed would have made if Gyrus had not infringed. If you determine that lost profits should not be awarded, Xomed is entitled to a reasonable royalty on each of Gyrus's sales of an infringing product. Even if you determine that Xomed is entitled to lost profits, you will still need to determine a reasonable royalty. I will explain to you at the end of the case how lost profits are calculated and how a reasonable royalty is determined. Xomed must prove the damages it has suffered as a result of Gyrus's infringement by a preponderance of the evidence.

SOURCE:      American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.1.3.

AT1 30049814.1

## Willful Infringement

Xomed asserts that Gyrus has knowingly and willfully infringed the '957 Patent claims. To prove willful infringement, Xomed must prove that Gyrus knew of the '957 Patent, and that Gyrus did not have a reasonable belief either that the patent was invalid or unenforceable or that it did not infringe the patent.

Asserting willful infringement requires a higher burden of proof—the clear and convincing standard—than Xomed's other claims, which require proof by a preponderance of the evidence. I will explain in more detail at the end of the case how you decide whether Gyrus willfully infringed Xomed's patent claims or not.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 3.1.4.

AT1 30049814.1

## *FINAL INSTRUCTIONS*

Members of the Jury:

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide the issues in this case. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.


SOURCE:     Gyrus's Proposed Jury Instructions 1.1 and 1.2.

## Jury Instruction No. 1 - General

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. In general, these charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

SOURCE:    Delaware Uniform Jury Instructions Proposed Preliminary Instruction.

**<u>Jury Instruction No. 2 – Direct and Circumstantial Evidence</u>**

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness, which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

SOURCE:      Delaware Uniform Jury Instructions Proposed Preliminary Instruction.

AT1 30049814.1

**<u>Jury Instruction No. 3 – Weighing Evidence</u>**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

SOURCE:     Delaware Uniform Instructions § 1.5.

AT1 30049814.1

## Jury Instruction No. 4 – Credibility of Witnesses

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

SOURCE:     Delaware Uniform Jury Instructions Proposed Preliminary Instruction.

AT1 30049814.1

**<u>Jury Instruction No. 5 – Expert Opinions</u>**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – she is called an expert witness – is permitted to state her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

SOURCE:     Gyrus's Proposed Jury Instruction 1.8.

AT1 30049814.1

**Jury Instruction No. 9 – Patents Generally**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

SOURCE:      The Federal Circuit Bar Association Draft Model Patent Jury Instructions § 6.

**<u>Jury Instruction No. 10 – Granting of Patents I</u>**

The basis for the grant of patents is found in the United States Constitution, which provides:

> The Congress shall have the power . . . to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.

In accordance with the Constitution, the United States Congress passed the Patent Statute, which provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

SOURCE:    Jury instruction given in *Honeywell, Inc. v. Victor Co. of Japan*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 10; 4-86 *Modern Federal Jury Instructions-Civil*, P. 86-2 (Matthew Bender 3d ed.) (modified); U.S. Const. Art. 1, § 8, cl. 8; 35 U.S.C. § 101; *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 477-78 (1974).

AT1 30049814.1

**<u>Jury Instruction No. 11 – Granting of Patents II</u>**

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains. I will instruct you later concerning the legal standards which you must employ in making such determinations.

A person applying for a patent must include a number of items in his or her application. The application must include a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification must conclude with one or more claims that particularly point out and distinctly claim the subject matter that the inventor regards as his or her particular invention.

When a patent application is received at the Patent and Trademark Office, it is assigned to a government official called an Examiner. The Examiner reviews the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. As part of the examination process, the Examiner reviews the prior work of others in the form of voluminous files and electronic databases of patents and publications. This type of material is called "prior art." Documents found in the search of prior art are typically called "references." In conducting the search of prior art, the Examiner notes in writing on the patent application file the classes or subclasses of the prior art which was searched and considered by the Examiner.

The compilation of the papers concerning the proceedings before the Patent Office is commonly referred to as the "prosecution history," "file wrapper," or "file history."

If, after reviewing the prior art, the Examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art, the application is granted as a U.S. patent.

SOURCE:    Delaware Uniform Jury Instructions Proposed Preliminary Instruction.

AT1 30049814.1

## Jury Instruction No. 12 – Issues to be Decided

In this case, you must decide several things according to the instructions that I shall give you. They include:

A. Whether Xomed has proven by a preponderance of the evidence that Gyrus induced infringement of the '957 Patent;

B. Whether Xomed has proven by a preponderance of the evidence that Gyrus contributed to the infringement of the '957 Patent;

C. Whether Xomed has proven through clear and convincing evidence that Gyrus willfully infringed the '957 Patent;

D. Whether Gyrus has proven through clear and convincing evidence that the '957 Patent is invalid; and,

E. The amount of damages that Xomed has proven by a preponderance of the evidence to which it is entitled.

SOURCE:     Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 14-15 (modified).

**Jury Instruction No. 13 – The Patent Claims**

As I told you at the beginning of trial, the claims of a patent are the numbered sentences at the end of the patent. The claims define what the patent owner owns and, therefore, control what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or methods for making of using a product.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may receive the tabletop, four legs and the glue that secrures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. An example of a method claim is a claim reciting the method of making the table, and may recite the steps of forming the table top and legs and attaching the legs to the tabletop. Each step is a separate limitation of the claims. In reaching your determination with respect to invalidity, you must consider each claim separately.

SOURCE:     Gyrus's Proposed Jury Instruction 2.2.

## Jury Instruction No. 14 – Claim Construction Generally

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the asserted claims of the '957 Patent are infringed or are invalid. Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

AUTHORITIES:  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc).

SOURCE:   The Federal Circuit Bar Association Draft Model Patent Jury Instructions § 7.1.

**Jury Instruction No. 15 – Independent and Dependent Claims**

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claims 1 and 3 of the 957 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

Claim 2 is a dependent claim. It refers to claim 1. To determine what dependent claim 2 covers, the words of that claim and the words of claim 1 must be read together.

SOURCE:     Gyrus's Proposed Instruction 2.4.

AT1 30049814.1

**Jury Instruction No. 15(a) – "Comprising" Claims**

The beginning portion, or preamble, of claims 1 and 3 of the 957 patent uses the word "comprising." Look at column 6, lines 25 and 51, of the 957 patent. "Comprising" means "including" or "containing." A claim that uses the word "comprising" is not limited to methods having only the steps that are recited in the claim, but also covers methods that include additional steps.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

SOURCE:     Gyrus's Proposed Instruction 2.5.

## Jury Instruction No. 16 – Claim Construction – Meaning of Terms

I have now instructed you as to the types of claims in this case. I will next define the meaning of the words used in the 957 patent claims. You must use the definitions I provide to you in your consideration of the infringement, invalidity and unenforceability issues. I will now ask that the text of the three claims be placed on the screen in the courtroom, with certain claim terms underlined. I will then give you my definitions for each of the underlined claim terms.

| | |
|---|---|
| 1. A method of performing <u>sinus surgery</u> utilizing a <u>sinus debrider instrument</u> having an outer tubular member with an opening at a <u>distal end</u> thereof, an inner member rotatably disposed within the outer tubular member with a <u>tissue cutting surface</u> of the inner member adjacent the opening in the outer tubular member, and an <u>annular space</u> between the outer tubular member and the inner member forming a <u>fluid passage</u> to <u>deliver fluid to the tissue cutting surface</u>, said method comprising the steps of<br><br>positioning a <u>distal end</u> of the <u>sinus debrider instrument</u> at an <u>operative site within a sinus</u>;<br><br>cutting <u>tissue</u> at the operative site within the <u>sinus</u> with the <u>tissue cutting surface</u> by rotating the inner member relative to the outer tubular member;<br><br>removing <u>tissue</u> cut by the <u>tissue cutting surface</u> from the sinus through a <u>suction passage</u> in the <u>sinus debrider instrument</u>; and<br><br><u>supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument</u> to facilitate the removing of cut tissue from the sinus. | <u>sinus</u>: Any of various air-filled cavities in the bones of the skull, especially one communicating with the nostrils.<br><br><u>sinus surgery</u>: A surgical operation or procedure involving the removal of tissue from the sinus on which the operation or procedure is being performed.<br><br><u>sinus debrider instrument</u>: A tool used for the surgical cutting and removal of tissue from the sinus on which the operation or procedure is being performed.<br><br><u>distal end</u>: The end which is remote, or farther from the point of reference, as opposed to proximal.<br><br><u>tissue cutting surface</u>: That portion at the distal end of the inner member of the sinus debrider instrument which performs the tissue cutting function.<br><br><u>annular space</u>: The space between the outer tubular member and the inner tubular member is shaped like or forms a ring in the cross section.<br><br><u>fluid passage</u>: A path, channel, or duct through or along which fluid may pass.<br><br><u>deliver fluid to the tissue cutting surface</u>: To contain fluid being delivered to the tissue cutting surface.<br><br><u>operative site within a sinus</u>: That location within the sinus where the surgical operation is performed.<br><br><u>tissue</u>: An aggregation of similar cellular matter.<br><br><u>suction passage</u>: A path, channel, or duct through or along which a fluid and/or solid may pass as a |

- 28 -

| | |
|---|---|
| | result of a suction force. |
| | <u>supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument</u>: Supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument such that fluid remains essentially within the instrument to be removed through the suction passage. |
| 2. The method of performing <u>sinus surgery</u> as recited in claim 1 wherein <u>the inner member is tubular and has a lumen therein</u> and wherein said step of removing cut <u>tissue</u> from the <u>sinus</u> includes <u>aspirating the cut tissue through the lumen</u> in the inner member. | <u>the inner member is tubular and has a lumen therein</u>: The inner member is a hollow cylinder that has an inner open space or cavity.<br><br><u>aspirating the cut tissue through the lumen</u>: Removing the cut tissue through the inner open space or cavity by suction. |
| 3. A method of performing sinus surgery utilizing a sinus debrider instrument having an outer tubular member with an opening at a distal end thereof, an inner member rotatably disposed within the outer tubular member with a tissue cutting surface of the inner member adjacent the opening in the outer tubular member, and an annular space between the outer tubular member and the inner member forming a fluid passage to deliver fluid to the tissue cutting surface, said method comprising the steps of<br><br>positioning a distal end of the sinus debrider instrument at an operative site within a sinus;<br><br>cutting tissue at the operative site within the sinus with the tissue cutting surface by rotating the inner member relative to the outer tubular member;<br><br><br>removing tissue cut by the tissue cutting surface from the sinus through a suction passage in the sinus debrider instrument; and<br><br>supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument to facilitate the removing of cut tissue from the sinus, said step of supplying fluid including supplying fluid from the fluid passage directly to the tissue cutting surface. | See claim 1 above, which is identical, except with respect to the last limitation, as to which claim 3 adds: "said step of supplying fluid including supplying fluid from the fluid passage directly to the tissue cutting surface." |

AT1 30049814.1

SOURCE:     Gyrus's Proposed Instruction 2.6.

<u>**Jury Instruction No. 17 – The Right to Exclude**</u>

A patent owner may enforce its right to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement. Patent laws provide that any person or business entity which makes, uses, offers to sell, or sells, without the patent owner's permission, any product, apparatus, or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

SOURCE: Court's Summ. J. Order dated July 22, 2003 at 12; 35 U.S.C. §§ 271, 281; *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1484 (Fed. Cir. 1984); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed Cir. 1988); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1562 (Fed. Cir. 1986); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992); *Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1124 (Fed. Cir. 1987).

AT1 30049814.1

**<u>Jury Instruction No. 18 – Inducement to Infringe I</u>**

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product or perform a process or method in a manner that infringes the patent. The patent owner must also prove that it is more probable than not that the other person infringed the patent. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

SOURCE:     American Bar Association Model Jury Instructions: Patent Litigation, No. 7.12.1.

AT1 30049814.1

**Jury Instruction No. 19 – Inducement to Infringe II**

Xomed asserts that Gyrus induced patent infringement. Xomed must prove four things by a preponderance of the evidence to establish that Gyrus induced infringement:

First, Gyrus encouraged or instructed another person to perform a method in a manner that you, the jury, find infringes the '957 Patent claims.

Second, Gyrus knew of the '957 Patent.

Third, Gyrus knew or should have known that its encouragement or instructions would likely result in the other person doing that which you find to be an infringement of the '957 Patent.

Fourth, the other person infringed the '957 Patent.

If you find that Xomed has proven these four things by a preponderance of the evidence, then you must find that Gyrus induced patent infringement.

SOURCE:    American Bar Association Model Jury Instructions: Patent Litigation, No. 7.12.1.

AT1 30049814.1

## Jury Instruction No. 20 – Contributory Infringement I

Contributory infringement can occur when a supplier or seller provides a component to another for use in a patented method. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not be a staple article or commodity of commerce suitable for a substantial use that does not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 7.12.2.

<u>**Jury Instruction No. 21 – Contributory Infringement II**</u>

In this case, Xomed asserts that Gyrus's selling or supplying certain sinus debrider instruments with irrigated sinus blades is contributing to the infringement of claims 1-3 of the '957 Patent. In order to establish that Gyrus has contributorily infringed those claims, Xomed must prove five things by a preponderance of the evidence:

First, Gyrus knew of the patent.

Second, the accused products, individually, are a material component of the patented method and Gyrus sold or supplied those products.

Third, Gyrus knew that the intended use of the product would infringe the patent.

Fourth, the component is not a staple or commodity article.

Fifth, the component was actually used in a manner that you find infringes the patent.

If you find that Xomed has proven these five things by a preponderance of the evidence, then you must find that Gyrus contributed to the infringement of the '957 Patent.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 7.12.2.

AT1 30049814.1

## Jury Instruction No. 22 – Willful Infringement

You must decide whether or not Xomed has proven by clear and convincing evidence that Gyrus's infringement was willful. Willful infringement is established where a plaintiff has proven two things: first, that defendant was aware of plaintiff's patent; and second, that defendant had no reasonable good faith basis for concluding that he did not infringe plaintiff's valid and enforceable patent.

For example, if you find Xomed has proven that Gyrus knew about the '957 Patent and did not exercise due care to determine whether or not it was infringing the '957 Patent, you may find that Gyrus's infringement was willful.

One factor to consider with respect to Gyrus's good faith and due care in determining the willfulness issue is whether Gyrus obtained legal advice from an attorney after becoming aware of the '957 Patent.

Another factor in determining whether Xomed has proven Gyrus willfully infringed Xomed's '957 Patent is your assessment of whether or not Gyrus copied the product covered by Xomed's '957 Patent claims or whether Gyrus, as a competitor of Xomed, tried to match Xomed's product with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

SOURCE:     Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 14-15 (modified).

AT1 30049814.1

**<u>Jury Instruction No. 23 – Invalidity Generally I</u>**

I will now instruct you on the rules you must follow in deciding whether Gyrus has proven that certain claims of the '957 Patent are invalid. To prove invalidity of any patent claim, Gyrus must persuade you by clear and convincing evidence that the claim is invalid. Instructions regarding each of Gyrus's invalidity defenses follow.

SOURCE: *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

AT1 30049814.1

## Jury Instruction No. 24 – Invalidity Generally II

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws.

Gyrus has challenged the validity of the asserted claims of the '957 Patent on a number of grounds. I remind you that the law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing a patent and that each claim of the patent is valid. However, once the validity of a patent has been put in issue, it becomes the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

Gyrus—the party challenging the validity of the '957 Patent—bears the burden of providing clear and convincing evidence that each of the asserted claims in the '957 Patent is invalid.

I will now explain each of Gyrus's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

AUTHORITIES:     *Morton Int'l v. Cardinal Chem. Co.*, 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

SOURCE:          Federal Circuit Bar Association Model Patent Jury Instruction 10.1.

**Jury Instruction No. 25 – Prior Art**

As I stated, under the patent laws, a person is entitled to a patent only if the invention recited by its claims is new and non-obvious in light of what came before the invention.  That which came before the invention is referred to as the "prior art." "Prior art" is prior work of others that is patented or described in a printed publication before the invention of the applicant.

SOURCE:     Gyrus's Proposed Jury Instruction No. 4.2; Final Jury Instruction 4.4 in Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., C.A. No. 99-309 (D. Del. 2001) (Sleet, J.) (modified); 35 U.S.C. Sec. 102.

AT1 30049814.1

## Jury Instruction No. 26 - Anticipation

To be patentable, an invention must be new. If it is not new—i.e., if someone else has already made the same invention—we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. Additional references may be relied upon to show that one skilled in the art could make and use what is disclosed in the prior art reference relied upon for anticipation.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

AUTHORITIES:    Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1346 (Fed. Cir. 1999); Abbot Labs. v. Geneva Pharms., Inc., 182 F.3d 1315, 1318 (Fed. Cir. 1999); Finnegan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1364 (Fed. Cir. 1999); C. R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1349 (Fed. Cir. 1998); Continental Can Co. USA, v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991); W. L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1548 (Fed. Cir. 1983).

SOURCE:    The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.8. Koito Mfg. Co. v. N. Am. Lighting, Inc., 381 F.3d 1142, 1151 (Fed. Cir. 2004); Elan Pharmaceuticals, Inc. v. Mayo Found. for Med. Educ., 346 F.3d 1051, 1054 (Fed. Cir. 2003); Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003); Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1295 (Fed. Cir. 2002); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001); In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999); In re Baxter Travenol Labs, 952 F.2d 388, 390 (Fed. Cir. 1991); Cont'l Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1268-69 (Fed. Cir. 1991), reh'g denied,

1991 U.S. App. LEXIS 29979 (Fed. Cir. Dec. 26, 1991) (unpublished); Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991); Reading & Bates Constr. Co. v. Baker Energy Res. Corp, 748 F.2d 645, 651 (Fed. Cir. 1984); Studiengesellschaft Kohle, M.B.H. v. Dart Indus., Inc., 726 F.2d 724, 726-727 (Fed. Cir. 1984), aff'd by, 862 F.2d 1564 (Fed. Cir. 1988)).

AT1 30049814.1

**Jury Instruction No. 27 – Interpretation Same for Infringement and Invalidity**

Claim limitations are interpreted the same way for the infringement question and for determining invalidity.

AUTHORITY:       *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744 (Fed. Cir. 1988).

**<u>Jury Instruction No. 28 - Derivation</u>**

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else. An invention is said to be "derived" from another person if that other person conceived of each and every element of the patented invention and communicated that complete conception to the inventor named on the patent. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort.

If an inventor derived the patented invention from someone else, then the patent claims covering the invention are invalid.

SOURCE:    American Bar Association Model Jury Instructions: Patent Litigation, No. 9.4.

AT1 30049814.1

**Jury Instruction No. 29 – Corroboration for Derivation**

In this case, Gyrus contends that claims 1-3 of the '957 Patent are invalid because the inventors on the '957 Patent derived the invention of those claims from Robert Mericle.  Gyrus must prove, through clear and convincing evidence, that each and every element of the '957 Patent was derived from Mr. Mericle.

To prove derivation by clear and convincing evidence, Gyrus cannot rely on the testimony of Mr. Mericle alone.  Mr. Mericle's testimony must be corroborated by physical, documentary or circumstantial evidence, or by reliable testimony from individual other than Mr. Mericle. Without this corroboration, Gyrus cannot meet the clear and convincing evidence standard.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 9.4.

AT1 30049814.1

**<u>Jury Instruction No. 30 - Obviousness</u>**

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the art at the time the invention was made. Gyrus contends that certain claims of the '957 Patent are invalid because the invention was "obvious."

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art in question to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Gyrus has the burden of proving by clear and convincing evidence that the claims of the '957 Patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field to which the patent relates. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the invention recited by the claims would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention recited by the claims would have been obvious to a person of ordinary skill in the field of the invention.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the '957 Patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

AT1 30049814.1

Against this background, you must decide whether or not the invention covered by the claims of the '957 Patent would have been obvious.

I will now describe these specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

AUTHORITIES:  Graham v. John Deere Co., 383 U.S. 1, 27-28 (1966); Ruiz v. A. B. Chance Co., 544 F.3d 654, 662-68 (Fed. Cir. 2000); Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000); In re Dembiczak, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); In re Rouffet, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); In re Deuel, 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

SOURCE:  The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.

## Jury Instruction No. 31 – Scope and Content of Prior Art

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Gyrus. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the patent claims. Here, Gyrus is relying on the combination of the Frost article or the Frost patent and the Hummer. Relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

AUTHORITIES: *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A. B. Chance Co.*, 544 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

SOURCE:   The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.1.

## Jury Instruction No. 32 – Differences Between Invention and Prior Art

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art asserted by Gyrus.

In deciding whether to combine what is described in various items of prior art asserted by Gyrus, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not someone reading the prior art would be discouraged from following the path taken by the inventor.

AUTHORITIES: *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A. B. Chance Co.*, 544 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Nyko Manufacturing Co. v. Nu-Star*, 950 F.2d 714, 717 (Fed. Cir. 1991).

SOURCE: The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.2.

## Jury Instruction No. 33 – Level of Ordinary Skill

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem. In this case, the parties have agreed that one of ordinary skill in the art is a sinus surgeon.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

AUTHORITIES:   *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A. B. Chance Co.*, 544 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

SOURCE:   The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.3.

AT1 30049814.1

**Jury Instruction No. 34 – Combination of Prior Art**

Once the prior art is assembled and considered, you should determine whether the prior art asserted by Gyrus, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.

AUTHORITY:        *See In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).

AT1 30049814.1

**Jury Instruction No. 35 – Objective Indication of Nonobviousness**

You also must consider what are referred to as objective indications of nonobviousness.  Some of these indications of nonobviousness are:

1. Commercial success of methods covered by the patent claims;

2. A long felt need for the invention;

3. Failed attempts by others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. The taking of licenses under the patent by others;

8. Expressions of surprise by experts and those skilled in the art at the making of the invention; and,

9. The patentee proceeded contrary to the accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious.  These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  For example, commercial success is relevant to obviousness only if the success of the method is related to a feature of the patent claims.  If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of nonobviousness.

AUTHORITIES:     *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A. B. Chance Co.*, 544 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

SOURCE:   The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.4.

AT1 30049814.1

**Jury Instruction No. 36 – Simplicity Does Not Equal Obviousness**

In your deliberation on the issue of obviousness, you must not equate simplicity with obviousness. The patent statute does not require that an invention be complex in order to be patentable.

In determining non-obviousness, you may not consider the manner in which the invention was made. Technological advance is often the fruit of methodical, persistent investigation, not a flash of genius.

In deciding the obviousness/non-obviousness question, you should not base your decision on what you think "ought" to be or "ought not" to be patentable.

SOURCE: 35 U.S.C. § 103; *Panduit Corp. v. Dennison Mfg.*, 810 F.2d 1561, 1573 (Fed. Cir. 1987), *cert. denied*, 481 U.S. 1052 (1987).

**Jury Instruction No. 37 – Gyrus's Obviousness Contentions**

Gyrus contends that the invention claimed in claims 1-3 of the '957 Patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of the prior art use of the Hummer device in sinus surgery combined with either the Frost Article or the Frost Patent. You may find obviousness only if you find that Gyrus has proven obviousness by clear and convincing evidence.

AUTHORITIES:    *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A. B. Chance Co.*, 544 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *In re Deuel*, 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

SOURCE:   The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.9.

AT1 30049814.1

## Jury Instruction No. 38 – Damages Generally

Because you have found that the '957 Patent is both valid and infringed, Xomed is entitled to damages adequate to compensate for the infringement. These damages may not be less than what a reasonable royalty would be for the use made of the invention by the infringer. In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement. You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate Xomed, to put Xomed into the position it would have been in if Gyrus had not infringed. You may not add anything to the amount of damages to punish Gyrus, or to set an example.

AUTHORITIES:     35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

SOURCE:     The Federal Circuit Bar Association Draft Model Patent Jury Instructions §12.1. 35 U.S.C. § 284 (2003); *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003).

<u>**Jury Instruction No. 39 – Two Types of Damages**</u>

As I explained at the outset of this portion of the trial, there are two types of damages for patent infringement.  I am now going to explain these two types of damages just as I did before.

The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.  I will discuss lost profits in more detail shortly.

The second type of patent damages is called reasonable royalty.  I will also discuss reasonable royalty later in more detail.  Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and that the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

SOURCE:     American Bar Association Model Jury Instructions:  Patent Litigation, No. 11.4.

AT1 30049814.1

## Jury Instruction No. 40 – Lost Profit Damages

I will first instruct you about lost profit damages. Simply stated, lost profit damages are the profits Xomed lost because of the infringement. They are not the profits Gyrus made. To recover lost profits damages, the patent owner must prove that "but for" the infringement, the patent owner would have made the sales made by the infringer. One way in which a patent owner can prove entitlement to lost profits is by satisfying the *Panduit* test, which requires that the patent owner prove: (1) a demand existed for the patented product; (2) there were no acceptable non-infringing substitutes; (3) the patent owner had the additional manufacturing and marketing capability to make and sell the quantity of the infringing product made and sold by the infringer; and (4) the amount of profit the patent owner would have made. The *Panduit* test is an acceptable but non-exclusive manner of proving lost profits. Ultimately, the patent owner must prove the profits it would have made but for the infringement.

Xomed says that it lost profits because Gyrus's infringement took away sales that Xomed would have made. This is called lost profits due to lost sales.

Xomed also says that it lost profits because it had to place additional systems free of charge to compete with Gyrus's free placement of systems used to infringe the '957 Patent.

Xomed has the burden to show that it is more probable than not that it would have made additional profits if Gyrus had not infringed.

SOURCE:   Gyrus's Proposed Post-evidence Damages Instruction 2; American Bar Association Model Jury Instructions:  Patent Litigation, No. 11.5.

**Jury Instruction No. 41 – Lost Sales**

Lost sales are those sales the patent owner lost because of the infringement.

To prove that it lost sales, Xomed must prove through a preponderance of the evidence that it would have made additional sales if Gyrus had not made the sales or placements you find to be an infringement.

Xomed may receive damages for lost sales only on those products that compete with Gyrus's products that you find to infringe, and that are functionally part of the competing product. Xomed may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

SOURCE:    American Bar Association Model Jury Instructions:  Patent Litigation, No. 11.6.

AT1 30049814.1

**<u>Jury Instruction No. 42 – Amount of Lost Profits</u>**

If Xomed has proven that it lost profits due to infringement by Gyrus then you are to determine the amount of profits that Xomed lost. Xomed must prove the amount of its lost profits to a reasonable probability. That is, the amount of lost profits damages should not include amounts that are merely speculative.

SOURCE:    American Bar Association Model Jury Instructions: Patent Litigation, No. 11.8.

AT1 30049814.1

## Jury Instruction No. 43 – Reasonable Royalty

It is also necessary for you to determine a reasonable royalty in this matter. If you find that Xomed has proven lost profits for all of Gyrus's infringing sales, then the damages award to Xomed should be those lost profits.

If you find that Xomed is not entitled to lost profit damages for all or some of the sales of Gyrus's irrigating sinus blades, then for those sales of Gyrus's irrigating sinus blades for which you do not award lost profits, you should determine the amount of the reasonable royalty.

Even if you award Xomed lost profits for all of Gyrus's infringing sales, you must still determine what a reasonable royalty would be in this case.

SOURCE: Gyrus's Proposed Post-evidence Damages Instruction No. 8; American Bar Association Model Jury Instructions: Patent Litigation, No. 11.9.

AT1 30049814.1

## Jury Instruction No. 44 – Amount of Reasonable Royalty

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be based on circumstances as of the time infringement began. You should assume that Gyrus and Xomed knew at that time such things as the level of sales and profits that Gyrus would make using the invention. You should also assume that Xomed was willing to grant Gyrus a license to sell the patented invention and that Gyrus was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Xomed and Gyrus would consider in setting the amount Gyrus should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty.

2. Royalties paid by Gyrus or by others for patents comparable to the 957 Patent.

3. Whether the license is exclusive or non-exclusive, and whether there are territorial restrictions or restrictions as to whom the product may be sold.

4. Whether or not Xomed had a policy of licensing or not licensing the patent.

5. Whether or not Xomed and Gyrus are competitors.

6. Whether being able to use the patented invention helps in making sales of other products or services.

7. The duration of the patent and the term of the license.

8. The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

9. The advantages and benefits of using the patented invention over products or processes not claimed in the 957 Patent.

10. The nature of the patented invention and the character of the commercial embodiment of the invention.

11. The extent of Gyrus's use of the patented invention and the value of that use to Gyrus.

12. Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the surgery field for use of patented inventions comparable to the inventions claimed in the 957 Patent.

13. The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Gyrus.

14. Expert opinions as to what would be a reasonable royalty.

15. Taking into account factors 1-14, the amount that a licensor and a licensee would have agreed on, if both had been reasonably and voluntarily trying to reach an agreement.

SOURCE: Gyrus Proposed Instruction 9 (Post-evidence Damages); American Bar Association Model Jury Instructions: Patent Litigation, No. 11.9.1.

AT1 30049814.1

**<u>Jury Instruction No. 45 – Reasonable Certainly as to Amount of Damages</u>**

You must award all damages that can be proven with "reasonable certainty." Reasonable certainty does not require proof of damages with mathematical certainty. However, you may not award damages based on conjecture. If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against the infringer.

SOURCE:   Federal Jury Instructions 86-33 (modified); Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 33-34 (modified); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Coastal Fuels of Puerto Rico, Inc. v. Carribean Petroleum Corp.*, 175 F.3d 18, 47 (1st Cir. 1999); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**<u>Jury Instruction No. 46 – Concluding Instructions</u>**

Upon retiring to your jury room to begin your deliberations, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court. Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict. Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way, to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in the form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what I think your verdict should be. What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts. A form of verdict has been prepared for your convenience. You will note that many of the questions in the special verdict form call for a "Yes" or "No" answer. You will also note from the wording of the questions that you will not need to answer some questions unless you answer other questions a particular way. Finally, you will note that certain questions do not require a "Yes" or "No" answer, but require you to fill in a dollar amount or other information. Your answers to all of these questions must be the unanimous answer of the jury. After you have completed answering the questions, the foreperson will then date and sign the special verdict as so completed; and you will then return with it to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.

SOURCE: Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 37-38.

AT1 30049814.1

Respectfully submitted this 24th day of August, 2006.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

/s/Christopher T. Nace
A. James Anderson
Georgia Bar No. 016300
Marla R. Butler
Georgia Bar No. 099917
Christopher T. Nace
Georgia Bar No. 553868
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326-1119
Telephone:  404.760.4300
Facsimile:  404.233.1267
Email:  ajanderson@rkmc.com
Email:  mrbutler@rkmc.com
Email:  ctnace@rkmc.com

**ATTORNEYS AND TRIAL COUNSEL FOR
PLAINTIFF MEDTRONIC XOMED, INC.
APPEARING SPECIALLY PURSUANT TO M.D.
LOCAL RULE 2.02**

-and-

R. Eric Bilik
Florida Bar No.:  0987840
Bryan S. Gowdy
Florida Bar No.: 0176631
McGUIREWOODS LLP
Bank of America Tower
50 North Laura Street, Suite 3300
Jacksonville, FL 32202-3661
Telephone:  904.798.2685
Facsimile:  904.360.6304
Email:  ebilik@mcguirewoods.com

**ATTORNEYS AND TRIAL COUNSEL FOR
PLAINTIFF MEDTRONIC XOMED, INC.**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| MEDTRONIC XOMED, INC. | ) | |
| a Delaware Corporation | ) | |
| | ) | Case No.:  3:04CV400-V-32 MCR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GYRUS ENT LLC | ) | |
| a Delaware Limited Liability Company | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2006 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Darle M. Short
Oliff & Berridge
277 South Washington Street
Suite 500
Alexandria, VA  22314

R. Eric Bilik
Bryan S. Gowdy
McGuirewoods LLP
Bank of America Tower
50 North Laura Street, Suite 3300
Jacksonville, FL 32202-3661

- 66 -

Thomas E. Bishop
Tanner Bishop
One Independent Drive
Suite 1700
Jacksonville, FL  32202

This 24th day of August, 2006.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


/s/Christopher T. Nace
A. James Anderson
Georgia Bar No. 016300
Marla R. Butler
Georgia Bar No. 099917
Christopher T. Nace
Georgia Bar No. 553868
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326-1119
Telephone:  404.760.4300
Facsimile:  404.233.1267
Email:  ajanderson@rkmc.com
Email:  mrbutler@rkmc.com
Email:  ctnace@rkmc.com

**ATTORNEYS AND TRIAL COUNSEL FOR
PLAINTIFF MEDTRONIC XOMED, INC.
APPEARING SPECIALLY PURSUANT TO M.D.
LOCAL RULE 2.02**