UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Medtronic Xomed, Inc.,        )
                                     )
        Plaintiff and Counterdefendant,  )
     v.                          )
                                     )   Case Number:  3:04-cv-400-J-32MCR
Gyrus ENT LLC,             )
                                     )
        Defendant and Counterclaimant.  )
_____)

**GYRUS ENT LLC'S COMBINED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

PRE-LIABILITY EVIDENCE INSTRUCTIONS ............................................................ 3

1.    Preliminary Instructions ............................................................................................ 3
2.    Burdens of Proof ....................................................................................................... 6
3.    The Parties and the Nature of the Case .................................................................... 6
4.    The Patent System, Generally ................................................................................... 7
5.    The Parts of a Patent ................................................................................................. 8
6.    Definitions ................................................................................................................. 9
7.    The Significance of Patent Claims ........................................................................... 10
8.    Issues to Be Decided ................................................................................................ 10
    8.1    Xomed's Contentions ....................................................................................... 11
        8.1.1    Direct Infringement ................................................................................. 11
        8.1.2    Indirect Infringement .............................................................................. 11
        8.1.3    Willful Infringement ................................................................................ 12
    8.2    Gyrus's Contentions ......................................................................................... 13
        8.2.1    Invalidity ................................................................................................. 13
        8.2.2    Anticipation ............................................................................................. 13
        8.2.3    Obviousness ............................................................................................ 13
        8.2.4    Written Description ................................................................................. 14
        8.2.5    Inventorship ............................................................................................ 15
        8.2.6    Inequitable Conduct ............................................................................... 15
9.    Witness Credibility ................................................................................................... 15
10.   Outline Of Trial ........................................................................................................ 17
INSTRUCTIONS DURING TRIAL ............................................................................... 18
FIRST RECESS ............................................................................................................... 18
DEPOSITION TESTIMONY .......................................................................................... 18
INTERROGATORIES ..................................................................................................... 19
POST-EVIDENCE LIABILITY INSTRUCTIONS ........................................................ 20
1.1    Introduction ............................................................................................................. 20
1.2    Jurors' Duties .......................................................................................................... 20
1.3    Evidence Defined .................................................................................................... 21
1.4    Consideration Of Evidence ..................................................................................... 22
1.5    Direct And Circumstantial Evidence ...................................................................... 22
1.6    Credibility Of Witnesses ......................................................................................... 23
1.7    Number Of Witnesses ............................................................................................. 23
1.8    Expert Witnesses ..................................................................................................... 24
PATENT LAW AND CLAIMS ...................................................................................... 24
2.1    The Patent System ................................................................................................... 24
2.2    The Claims of the Patent in Suit ............................................................................. 24
2.3    Construction of the Claims ...................................................................................... 25
2.4    Independent and Dependent Claims ........................................................................ 26
2.5    "Comprising" Claims .............................................................................................. 26
2.6    Limitations of the Claims at Issue .......................................................................... 27

PATENT INFRINGEMENT ........................................................................................... 29
3.1    Patent Infringement, Generally—Direct Infringement ..................................... 29
3.2    Literal Infringement ........................................................................................... 30
3.3    Determination of Infringement .......................................................................... 31
3.4    Infringement of Dependent Claims .................................................................... 31
3.5    Indirect Infringement ......................................................................................... 32
   3.5.1    Contributory Infringement ........................................................................ 32
   3.5.2    Inducing Patent Infringement .................................................................... 34
3.6    Willful Infringement .......................................................................................... 35
   3.6.1    Reliance on Advice of Counsel ................................................................. 36
   3.6.2    Willfulness Under All the Circumstances ................................................. 36
VALIDITY ................................................................................................................... 37
4.1    Validity—in General .......................................................................................... 37
4.2    The Prior Art ...................................................................................................... 38
   4.2.1    Prior Art—Date of Invention .................................................................... 38
   4.2.2    Prior Art—Prior Invention ........................................................................ 40
4.3    Derivation ........................................................................................................... 42
4.4    Anticipation/Lack of Novelty ............................................................................ 44
4.5    Obviousness ........................................................................................................ 45
4.6    The Scope and Content of the Prior Art ............................................................. 47
4.7    Differences between the Invention of the Claims and the Prior Art .................. 47
4.8    Level of Ordinary Skill ...................................................................................... 48
4.9    Objective Indications Concerning Obviousness ................................................ 48
4.10   Determination of Obviousness ........................................................................... 49
4.11   Written Description ............................................................................................. 51
INEQUITABLE CONDUCT ....................................................................................... 51
5.1    Inequitable Conduct—in General ...................................................................... 51
5.2    Gyrus's Inequitable Conduct Contentions ......................................................... 53
5.3    Materiality .......................................................................................................... 54
5.4    Intent ................................................................................................................... 55
6.     Deliberation And Verdict ................................................................................... 57
**PRE-DAMAGES EVIDENCE INSTRUCTIONS** ................................................. 59
**POST-EVIDENCE DAMAGES INSTRUCTIONS** ................................................ 60
1.     Two Types of Damages—Lost Profits and Reasonable Royalty ....................... 60
2.     Lost Profits—in General .................................................................................... 60
3.     Absence of Available, Acceptable Non-infringing Substitutes - Second *Panduit* Factor .. 61
4.     Market Share Lost Profits ................................................................................... 62
5.     Lost Profits - Xomed's Increased Placements Assertion .................................... 62
6.     Lost Profits - Convoyed Sales ............................................................................ 63
7.     Amount of Lost Profits ....................................................................................... 64
8.     Reasonable Royalty ............................................................................................ 64
9.     What Is a Reasonable Royalty? .......................................................................... 64

Defendant Gyrus ENT, LLC submits herewith its proposed jury instructions for this case. The jury instructions are in five sections: (1) pre-, (2) during and (3) post-evidence as to liability and (4) pre- and (5) post-evidence as to damages. The instructions are divided between liability and damages in view of the August 1, 2006 Order bifurcating the trial. Notations after the individual instructions indicate whether or not they are agreed between the parties and the general source of the instruction.

The parties agreed to base their proposed jury instructions on the Model Jury Instructions for Patent Litigation published in 2005 and developed jointly by the American Bar Association, Section of Litigation, Committee on Intellectual Property Litigation and the Federal Circuit Bar Association, Model Patent Jury Instruction Committee. Between these two committees, three district court judges (Avern Cohn (E.D. Mich.), Patti B. Saris (D. Mass.) and Ronald M. Whyte (N.D. Cal.)) and 18 distinguished members of the bar (including Roderick R. McKelvie, former United States District Court Judge for the District of Delaware) participated in preparing the model instructions. While many of the ABA/Fed. Cir. Bar Ass'n instructions have accompanying notes that cite to the authority on which they are based, such notes have not been included in this submission. They are available in MODEL JURY INSTRUCTIONS: PATENT LITIGATION (ABA, Section of Litigation 2005) and will be supplied to the Court if desired or if relevant to a dispute as to the instructions.

One of the principal features of the ABA/Fed. Cir. Bar instructions is that they are intended to be "plain-English, party-neutral instructions." Accordingly, instead of referring to formulaic "preponderance of the evidence" and "clear and convincing evidence" standards, they refer to the two burdens of proof as requiring either proof that "what the party seeks to prove is more probably true than not true" or that "it is highly probable that what the party seeks to prove

is true." Gyrus's instructions consistently follow the ABA/Fed. Cir. Bar plain-language approach, while Xomed's proposed instructions do not. That is, sometimes Xomed's proposed instructions use the formulaic language and other times Xomed's proposed instructions use the "plain-English" approach. For example, on infringement and other issues as to which it bears the burden of proof, Xomed has sometimes opted for plain language instructions that the jury must be convinced that a fact is "more probable than not." *See* Xomed's Proposed Jury Instructions 18 (Induced Infringement) and 40 (Lost Profits). Xomed has also agreed to Gyrus's proposed instruction 2, which explains the two standards using the plain language of the ABA/Fed. Cir. Bar Ass'n model rules. On the other hand, when Gyrus has the burden on an issue, Xomed's proposed instructions revert to the formulaic language. See, e.g., Xomed's Proposed Jury Instructions 23, 24, 26 and 29. To prevent jury confusion, Gyrus requests the Court to use the plain language instructions throughout.

The introduction to the Model Jury Instructions makes clear that they do not encompass every issue that may arise in a patent case:

> The instructions focus on the jury's role as fact-finder and the broad legal principles of patent law. They do not, however, address every factor or legal theory that courts have used to decide a particular issue. If such a factor or legal theory is relevant to a particular case, it may be addressed by a special instruction or through arguments made by trial counsel.

Accordingly, additional language has been included in these instructions to address specific issues present here that have not been addressed by the ABA/Fed. Cir. Bar model instructions. Other leading sets of model patent instructions have been used for that purpose, as well as caselaw from the Federal Circuit and other courts. Footnotes cite specific authority for particular added language.

2

Gyrus has not included argument as to why its instructions, to the extent they differ from Xomed's, accurately reflect the law and will be more helpful to the jury. Gyrus understands the parties will have an opportunity, at a time to be determined by the Court, to address such issues.

## PRE-LIABILITY EVIDENCE INSTRUCTIONS

### 1.      Preliminary Instructions

Ladies and gentlemen: You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

It is your duty to decide from the evidence what the facts are. You, and you alone, are the judges of the facts. You will hear and see the evidence, decide what the facts are, and then apply those facts to the law which I will give to you. That is how you will reach your verdict. In doing so, you must follow that law whether you agree with it or not. The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the attorneys agree or which I instruct you to accept as true.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what the verdict should be.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence. At the end of the trial, you will have to make your decision based on what you recall of the evidence. While the exhibits will be available for your review, you will not have a written transcript to consult, and it is difficult and

time consuming for the reporter to read and/or play back lengthy testimony.  I urge you to pay close attention to the testimony as it is given.

You have the right to take notes during the course of this trial if you choose to do so. However, you do not have to take notes.  That is entirely up to you.

Note pads will be provided for your convenience.  If you decide to take notes, please place your name on the cover of the note pad.  No one else is allowed to look at your notes.

You may use your notes to refresh your memory at the appropriate time.  Your notes are for your own use only, not for any other juror's.  Do not show them to anyone at any time; that includes other jurors, and that includes the time when the jury is deliberating on the verdict.

You should rely on your own memory of the testimony.  If your notes conflict with your memory, or if someone else's notes conflict with your memory, you are free to use your own memory of the testimony.  Just because a juror has taken notes does not mean his or her memory of the testimony has any more weight or impact than the memory of a juror who has not taken notes.

Your notes will not leave this courtroom.  They will be collected by the bailiff when you leave for lunch and at the close of the court day and returned to you at the beginning of the next court session.  At the end of the trial, when you are discharged, the notes will again be collected by the bailiff.  They then will be destroyed.  No one will be allowed to look at the notes before they are destroyed.

Until this trial is over, do not discuss this case with anyone, even family and friends, and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until I give my final instructions to you and the jury begins deliberating on a verdict. With respect to family and friends, you can tell them that you are a juror, but that you cannot tell

4

them anything about the case until the trial is over.   If anyone should attempt to discuss this case or to approach you concerning this case, you should inform me immediately by giving a note to the bailiff, who will give your note to me.  Avoid any contact with the people involved in the case -- the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear during this trial.  Do not learn or attempt to learn anything about the case from any other source.

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

| | |
|---|---|
| *Status*: | Agreed |
| *Source*: | Agreed Jury Instruction No. 1 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.) |
| *Authority*: | 5th Cir. Pattern Jury Instruction 1.1 (2004); Illinois Pattern Jury Instructions (2005). |

2.      **Burdens of Proof**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In a patent infringement case such as this, there are two different burdens of proof that are used.

The first burden of proof standard, sometimes referred to as the preponderance of the evidence standard, requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true.

The second burden of proof standard is a higher one. It is sometimes referred to as the clear and convincing evidence standard. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt." That burden of proof is the highest standard. It does not apply to a patent case such as this one, and you should therefore put it out of your mind.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply. At the end of the trial I will review for you which burden of proof, either the more probable than not standard or the highly probable standard, to apply to each issue in this case.

*Status*:        Agreed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 1.

3.      **The Parties and the Nature of the Case**

As I have told you, this is a patent infringement case. It involves U.S. Patent No. 6,293,957, owned by Xomed, the plaintiff in this case. Patents are often referred to by their last three digits. Thus, the patent in this case will be often referred to as the 957 patent.

The 957 patent relates to a method of conducting sinus surgery, using a surgical instrument called a debrider.  During the trial the parties will offer testimony to familiarize you with this technology.

Xomed contends that sinus surgeons, when using debriders made and sold by Gyrus, the defendant in this case, in sinus surgery, infringe the 957 patent and that Gyrus induces and contributes to that alleged infringement.   Xomed further contends that Gyrus's indirect infringement of the 957 patent is willful.

Gyrus denies that the use of its debriders infringes the 957 patent and that it has not induced or contributed to any infringement of the 957 patent.  Gyrus also contends that the 957 patent is invalid and unenforceable for a number of reasons that I will tell you about shortly.

I will next explain the U.S. patent system, the parts of a patent, and how a person obtains a patent.

*Status*:      Disputed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 2.1.

## 4.      The Patent System, Generally

Patents are issued by the United States Patent and Trademark Office.  Patents can be correctly or wrongly issued by the United States Patent and Trademark Office, as we will discuss.

The owner of a valid and enforceable patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent's claims.  We will discuss the claims shortly.

A patent is granted for a set period of time, which, in this case, is 20 years from the time the first application for the 957 patent was filed. Once a patent expires, anyone is free to use the invention covered by the patent.

To be entitled to patent protection an invention must be new, useful and non-obvious. A patent cannot legally take away the right to use that which was already known before the invention was made, or that which was obvious from what was already known. Thus, a patent, even if granted by the United States Patent and Trademark Office, will not be valid if it deprives people of the right to use old or known processes, or of their right to use processes that were obvious at the time the invention was made. That which was already known at the time of the invention is called the "prior art." You will hear about the prior art relating to the 957 patent during the trial, and I will give you more instructions regarding the prior art at the end of the case.

> *Status*:      Disputed
>
> *Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 2.2.

**5.     The Parts of a Patent**

A patent includes two basic parts: first, a written description of the invention, which includes drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

You have been provided with a copy of the 957 patent. Please refer to the patent as I identify its different sections.

The cover page of the 957 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the applicants' names, the filing

date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the 957 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the patent.

Next are the drawings, which appear as Figures 1 to 19 on the next five pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification. The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the 957 patent begins at column 1, line 1, and continues to column 6, line 15.

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of steps, referred to as "claim limitations." In the 957 patent, the claims begin at column 6, line 17 and continue to the end of the patent, at column 6, line 65. We will discuss the significance of the patent claims shortly.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 2.3.

## 6.    Definitions

I will now explain a few additional patent-related terms that you are likely to hear mentioned during this trial:

**Application** – The initial papers filed by the applicant, usually by his or her attorney, in the United States Patent and Trademark Office, also called the Patent Office or PTO.

**Office Action** – Written communication from the patent examiner to the applicant or the applicant's attorney regarding the application.

**Patent Examiners** – Personnel employed by the PTO who review (examine) patent applications to determine whether the claims of a patent application are patentable over the prior art before

the examiner and whether the patent application meets other requirements. Each patent examiner is assigned a specific technical area.

**Prosecution history** – All of the written communications between the applicant and the PTO, including the original patent application and all subsequent communications between the PTO and applicant. The prosecution history may also be referred to as the "file wrapper" of the patent.

**Prosecution of a patent** - The filing of the patent application and all interaction with the PTO regarding the application.

**Ordinary skill in the art** – The *typical* level of experience, education, and/or training of those individuals who work in the field of the invention.

> *Status*:      Agreed
>
> *Source*:      American Intellectual Property Lawyer's Association Model Patent Jury Instructions, Glossary of Patent Terms.

## 7.    The Significance of Patent Claims

In this case, we will be concerned with claims 1-3 of the 957 patent. Xomed contends that claims 1-3 are infringed. Gyrus contends that claims 1-3 are not infringed, and that they are invalid and unenforceable.

The language of patent claims may not be clear to you. I will instruct you about the meanings of the claim language at the end of the trial. You must use the meanings I give you when you decide the issues of infringement and invalidity.

> *Status*:      Disputed
>
> *Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 2.4.

## 8.    Issues to Be Decided

I will now give you some information about the issues that will be presented to you at this trial. At the close of the trial, you will be given a verdict form with questions that you must answer in reaching your verdict. I will then give you more specific instructions to follow.

> *Status*:      Agreed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.

**8.1   Xomed's Contentions**

I will first describe Xomed's contentions to you.

*Status*:      Agreed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.1.

**8.1.1   Direct Infringement**

As I told you, Xomed contends that sinus surgeons infringe claims 1-3 of the 957 patent when they use the Gyrus debriders in sinus surgery.  This is called direct infringement.  To prevail on direct infringement, Xomed must prove that it is more probable than not that when sinus surgeons use the Gyrus debriders in sinus surgery, such use practices each and every limitation of one or more of the 957 patent claims.  Gyrus contends that the use of its debriders by sinus surgeons in sinus surgery does not infringe the 957 patent claims.

*Status*:      Disputed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.1.1.

**8.1.2   Indirect Infringement**

Xomed contends that Gyrus indirectly infringes claims 1-3 of the 957 patent by contributing to the alleged infringement by the sinus surgeons and by inducing sinus surgeons to directly infringe the claims.  There are two types of indirect infringement: contributory infringement and inducing infringement.

For Gyrus to be liable for contributory infringement of the 957 patent claims, Xomed must prove that it is more probable than not that use of the Gyrus debriders in sinus surgery infringes the 957 patent claims, that the debriders have no substantial non-infringing use and that Gyrus knew that its debriders was especially made for use in an infringing manner.  Gyrus

11

contends that sinus surgeons using Gyrus's debrider systems do not infringe the 957 patent claims, that its debriders have substantial non-infringing uses and that it did not know its debriders were being used in an infringing manner.

For Gyrus to be liable for inducing infringement, Xomed must prove that it is more probable than not that Gyrus purposefully caused, urged or encouraged sinus surgeons to use the Gyrus debriders in a manner that infringes the 957 patent claims, and that Gyrus intended for the sinus surgeons to infringe the 957 patent claims. Gyrus contends that it did not purposefully cause, urge or encourage sinus surgeons to use its debriders in an infringing way, and that it had no intent that the sinus surgeons use its debriders in an infringing way.

*Status*:    Disputed

*Source*:    ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.1.2.

### 8.1.3   Willful Infringement

Xomed asserts that Gyrus willfully infringed the 957 patent claims. To succeed on this assertion, Xomed must prove, by a higher burden of proof -- the highly probable standard -- that Gyrus did not have a reasonable belief either that the 957 patent was invalid or unenforceable or that it did not infringe the patent.

Gyrus contends that it had a reasonable belief that use of its debrider systems did not infringe the 957 patent claims and that the claims were invalid because it received advice of counsel that use of its debriders did not infringe the 957 patent claims and that the claims were invalid. I will explain in more detail at the end of the case how you decide whether Gyrus willfully infringed Xomed's patent claims.

*Status*:    Disputed

*Source*:    ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.1.4.

**8.2     Gyrus's Contentions**

I will now instruct you on Gyrus's contentions.

*Status*:          Agreed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.

**8.2.1   Invalidity**

Gyrus contends that claims 1-3 of the 957 patent are invalid for a number of reasons. Although the Patent and Trademark Office issued the 957 patent, it is your job to determine whether or not the Patent and Trademark Office wrongfully issued the 957 patent; that is, it is your job to determine whether or not the 957 patent is invalid.

I will now briefly explain Gyrus's invalidity contentions.  I will provide more details for each ground in my final instructions.

*Status*:          Agreed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.1.

**8.2.2   Anticipation**

Gyrus contends that the invention recited in claims 1-3 of the 957 patent is not new.  An invention that is not new is said to be "anticipated" by the prior art.  In order to prove that a claim is anticipated by the prior art, Gyrus must prove that it is highly probable that each and every limitation of the claim is present in a prior art reference.  Xomed contends that no prior art reference contains all of the limitations of any of the 957 patent claims.

*Status*:          Agreed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.2.

**8.2.3   Obviousness**

Gyrus contends that claims 1-3 of the 957 patent are invalid for obviousness.  A patent claim will be invalid, even if it is not anticipated by the prior art, if the invention recited in the

claim would have been obvious to a person of ordinary skill in the field of the invention at the time it was made. The ordinary skilled person is a person of average education and training in the field of the invention and is presumed to be aware of all of the relevant prior art.

In order to prove invalidity based on obviousness, Gyrus must prove that it is highly probable that the invention recited in the patent claims would have been obvious to a person of ordinary skill in the field of invention at the time the invention was made.

Xomed contends that the 957 patent claims would not have been obvious to one of ordinary skill at the time of their invention.

> *Status*:      Agreed
>
> *Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.3.

## 8.2.4   Written Description

Gyrus contends that claims 1-3 of the 957 patent are invalid because the patent does not contain an adequate written description of the claims.

The description in the patent specification of the invention recited by the claims must be complete. This is referred to as the "written description requirement." In order to prove that claims 1-3 of the 957 patent are invalid for lack of a written description, Gyrus must prove that it is highly probable that the specification does not contain a description of each and every limitation of those patent claims.

Xomed contends that the 957 patent specification adequately describes the 957 patent claims.

> *Status*:      Agreed
>
> *Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.4.

### 8.2.5  Inventorship

Gyrus contends that Mr. Robert Mericle is the true inventor, or at least a co-inventor of the 957 patent claims. That is, Gyrus contends that Mr. Mericle conceived or invented the method recited by the 957 patent claims before the 957 patent applicants and Mr. Mericle's earlier invention was communicated to the applicants.

Xomed contends that the applicants are the only inventors of the 957 patent claims.

*Status*:        Disputed

*Source*:        Instruction to address issue not covered by ABA/Fed. Cir. Bar Ass'n.

### 8.2.6  Inequitable Conduct

Gyrus contends that Xomed may not enforce the 957 patent because Xomed engaged in inequitable conduct before the Patent and Trademark Office when it obtained the 957 patent. To prevail on inequitable conduct, Gyrus must prove that it is highly probable that one or more of the applicants' attorneys or other Xomed employees substantively involved in the prosecution of the 957 patent withheld or misrepresented material information from or to the Patent Examiner, and did so with an intent to mislead or deceive the Patent and Trademark Office.

Xomed contends that the 957 patent was not obtained by inequitable conduct.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.2.5.

### 9.  Witness Credibility

You will have the opportunity to observe witnesses give testimony during this trial. It is your job to decide how believable each witness is in his testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making

these judgments, you should carefully scrutinize all of the testimony and exhibits, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness' memory;

3.  the witness' manner while testifying;

4.  the witness' interest in the outcome of the case and any bias or prejudice;

5.  whether other evidence contradicted the witness' testimony;

6.  the reasonableness of the witness' testimony in light of all the evidence; and

7.  any other factors that bear on believability.

A witness may be discredited or impeached by contradictory evidence; by prior testimony during a deposition; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe any witness has been discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you think it deserves.

After you have considered all of the factors bearing upon the credibility of a witness that I have mentioned to you, you may conclude to reject all of the testimony of a particular witness, none of the testimony of a particular witness, or part of the testimony of a particular witness.  In other words, you may give the testimony of any witness such credibility and weight, if any, as you may think it deserves.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should also consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency with other credible testimony.

*Status*:     Agreed

*Source*:     Agreed Jury Instruction No. 7 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.)

*Authority*:     1 L. Sand, Modern Federal Jury Instructions (2001) Instruction 76-1.

## 10.     Outline Of Trial

The trial will now begin. First, each side will make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The plaintiffs will then present evidence, and counsel for the defendant may cross-examine. Then the defendant will present evidence, and counsel for the plaintiffs may cross-examine.

The plaintiff will then present rebuttal evidence and the defendant may also present rebuttal evidence.

After the evidence has been presented, the attorneys will make closing arguments and I will instruct you on the law that applies to the case.

You will then decide the case.

*Status*:     Disputed. Xomed does not agree that Gyrus is entitled to a rebuttal case.

*Source*:     ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 2.1.

## INSTRUCTIONS DURING TRIAL

### FIRST RECESS

We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, except during jury deliberations, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately by giving a note to the bailiff as we discussed. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors. I may not repeat these things to you before every break that we take, but please keep them in mind throughout the trial.

| | |
|---|---|
| *Status*: | Agreed |
| *Source*: | Agreed Jury Instruction No. 11 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.) |
| *Authority*: | 5th Cir. Pattern Jury Instruction 2.1 (2004). |

### DEPOSITION TESTIMONY

Parts of a deposition are now going to be presented as evidence.

Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the questions and answers. This is called a deposition. The questions and answers will be read or shown to you now. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present today and had testified from the witness stand in court.

| | |
|---|---|
| *Status*: | Agreed |

*Source*:    Agreed Jury Instruction No. 12 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.)

*Authority*:    5th Cir. Pattern Jury Instruction 2.23 (2004).

## INTERROGATORIES

Some of the exhibits in this case are interrogatory responses.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side.  You may consider a party's answers to interrogatories as evidence against that party who made the answer, just as you would any other evidence which has been admitted in this case.  However, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

One cautionary word on this subject: while you may consider the interrogatory answers as evidence against the party who gave the answers, you may not consider the answers against any other party, nor may you consider the answers as evidence against the party who posed the interrogatory questions.  You may only consider the interrogatory answer as evidence against the party who gave the answer.

*Status*:    Disputed

*Source*:    Agreed Jury Instruction No. 13 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.)

*Authority*:    1 L. Sand, Modern Federal Jury Instructions (2001) Instruction 74-13.

## POST-EVIDENCE LIABILITY INSTRUCTIONS

## <u>GENERAL INSTRUCTIONS</u>

### 1.1     Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

*Status*:       Agreed

*Source*:      District of Delaware Uniform Jury Instruction 1.1 for Patent Cases.

### 1.2     Jurors' Duties

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide the issues in this case. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree

with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

 *Status*:  Agreed

 *Source*:  District of Delaware Uniform Jury Instruction 1.2 for Patent Cases.

**1.3** **Evidence Defined**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

*Status*:          Agreed

*Source*:          District of Delaware Uniform Jury Instruction 1.4 for Patent Cases.

## 1.4      Consideration Of Evidence

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

*Status*:          Agreed

*Source*:          District of Delaware Uniform Jury Instruction 1.5 for Patent Cases.

## 1.5      Direct And Circumstantial Evidence

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  For example, if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one

is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

*Status*:        Agreed

*Source*:      District of Delaware Uniform Jury Instruction 1.6 for Patent Cases.

### 1.6    Credibility Of Witnesses

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

*Status*:        Agreed

*Source*:      District of Delaware Uniform Jury Instruction 1.7 for Patent Cases.

### 1.7    Number Of Witnesses

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

*Status*:        Agreed

*Source*:        District of Delaware Uniform Jury Instruction 1.8 for Patent Cases.

**1.8     Expert Witnesses**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

*Status*:        Agreed

*Source*:        District of Delaware Uniform Jury Instruction 1.9 for Patent Cases.

<div align="center">

**PATENT LAW AND CLAIMS**

</div>

**2.1     The Patent System**

At the beginning of the trial, I gave you some general information about patents and the patent system, and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

*Status*:        Agreed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 5.

**2.2     The Claims of the Patent in Suit**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims define what the patent owner owns and, therefore, control what the patent owner may prevent others from doing.  Claims may describe products, such as machines or chemical compounds, or methods for making or using a product.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. An example of a method claim is a claim reciting the method of making the table, and may recite the steps of forming the table top and legs and attaching the legs to the tabletop. Each step is a separate limitation of the claims.

*Status*:          Agreed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 6.

## 2.3    Construction of the Claims

In deciding whether or not an accused method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the 957 patent claims mean and to instruct you about that meaning. My constructions are to be interpreted from the perspective of one of ordinary skill in the art, which in this case is a sinus surgeon having the qualifications that we will discuss.[1] You must accept the meanings I give you and use them when you decide whether or not the 957 patent is infringed, and whether or not the 957 patent is invalid and unenforceable.

I will now give you my instructions concerning the meaning of the claims. It may be helpful to refer to the copy of the 957 patent that you have been given as I discuss the claims at issue here. The claims are at the end of the patent, in column 6, in the paragraphs numbered 1-3.

*Status*:          Disputed

---

[1] *See, e.g., Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004) ("Claim terms must be construed as they would be understood by a person of ordinary skill in the art to which the invention pertains. . . . What the claim terms would mean to laymen is irrelevant."); *Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1314 (Fed. Cir. 2003) ("The words used in the claims are examined from the perspective of a person skilled in the art."); *Generation II Orthotics, Inc. v. Medical Technology, Inc.*, 263 F.3d 1356, 1366 (Fed. Cir. 2001) ("We recognize that it is important to bear in mind that the viewing glass through which the claims are construed is that of a person of ordinary skill in the art.").

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 6.1.

## 2.4    Independent and Dependent Claims

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus it is not necessary to look at any other claim to determine what an independent claim covers.  Claims 1 and 3 of the 957 patent are independent claims.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

Claim 2 is a dependent claim.  It refers to claim 1.  To determine what dependent claim 2 covers, the words of that claim and the words of claim 1 must be read together.

*Status*:        Agreed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 6.2.

## 2.5    "Comprising" Claims

The beginning portion, or preamble, of claims 1 and 3 of the 957 patent uses the word "comprising."  Look at column 6, lines 25 and 51, of the 957 patent.  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" is not limited to methods having only the steps that are recited in the claim, but also covers methods that include additional steps.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

*Status*:        Agreed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 6.5.1.

## 2.6   Limitations of the Claims at Issue

I have now instructed you as to the types of claims in this case. I will next define the meaning of the words used in the 957 patent claims. You must use the definitions I provide to you in your consideration of the infringement, invalidity and unenforceability issues. I will now ask that the text of the three claims be placed on the screen in the courtroom, with certain claim terms underlined. I will then give you my definitions for each of the underlined claim terms.

| | |
|---|---|
| 1. A method of performing sinus surgery utilizing a sinus debrider instrument having an outer tubular member with an opening at a distal end thereof, an inner member rotatably disposed within the outer tubular member with a tissue cutting surface of the inner member adjacent the opening in the outer tubular member, and an annular space between the outer tubular member and the inner member forming a fluid passage to deliver fluid to the tissue cutting surface, said method comprising the steps of<br><br>positioning a distal end of the sinus debrider instrument at an operative site within a sinus;<br><br>cutting tissue at the operative site within the sinus with the tissue cutting surface by rotating the inner member relative to the outer tubular member;<br><br>removing tissue cut by the tissue cutting surface from the sinus through a suction passage in the sinus debrider instrument; and | sinus: Any of various air-filled cavities in the bones of the skull, especially one communicating with the nostrils.<br><br>sinus surgery: A surgical operation or procedure involving the removal of tissue from the sinus on which the operation or procedure is being performed.<br><br>sinus debrider instrument: A tool used for the surgical cutting and removal of tissue from the sinus on which the operation or procedure is being performed.<br><br>distal end: The end which is remote, or farther from the point of reference, as opposed to proximal.<br><br>tissue cutting surface: That portion at the distal end of the inner member of the sinus debrider instrument which performs the tissue cutting function. |

| | |
|---|---|
| <u>supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument</u> to facilitate the removing of cut tissue from the sinus. | <u>annular space</u>: The space between the outer tubular member and the inner tubular member is shaped like or forms a ring in the cross section.<br><br><u>fluid passage</u>: A path, channel, or duct through or along which fluid may pass.<br><br><u>deliver fluid to the tissue cutting surface</u>: To contain fluid being delivered to the tissue cutting surface.<br><br><u>operative site within a sinus</u>: That location within the sinus where the surgical operation is performed.<br><br><u>tissue</u>: An aggregation of similar cellular matter.<br><br><u>suction passage</u>:  A path, channel, or duct through or along which a fluid and/or solid may pass as a result of a suction force.<br><br><u>supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument</u>: Supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument such that fluid remains essentially within the instrument to be removed through the suction passage. |
| 2. The method of performing <u>sinus surgery</u> as recited in claim 1 wherein <u>the inner member is tubular and has a lumen therein</u> and wherein said step of removing cut <u>tissue</u> from the <u>sinus</u> includes <u>aspirating the cut tissue through the lumen</u> in the inner member. | <u>the inner member is tubular and has a lumen therein</u>:  The inner member is a hollow cylinder that has an inner open space or cavity.<br><br><u>aspirating the cut tissue through the lumen</u>: Removing the cut tissue through the inner open space or cavity by suction. |
| 3. A method of performing sinus surgery utilizing a sinus debrider instrument having an outer tubular member with an opening at a distal end thereof, an inner member rotatably disposed within the outer tubular member with a tissue cutting surface of the inner member adjacent the opening in the outer tubular | See claim 1 above, which is identical, except with respect to the last limitation, as to which claim 3 adds: "said step of supplying fluid including supplying fluid from the fluid passage directly to the tissue cutting surface." |

| member, and an annular space between the outer tubular member and the inner member forming a fluid passage to deliver fluid to the tissue cutting surface, said method comprising the steps of | |
|---|---|
| positioning a distal end of the sinus debrider instrument at an operative site within a sinus; | |
| cutting tissue at the operative site within the sinus with the tissue cutting surface by rotating the inner member relative to the outer tubular member; | |
| removing tissue cut by the tissue cutting surface from the sinus through a suction passage in the sinus debrider instrument; and | |
| supplying fluid to the tissue cutting surface through the fluid passage in the sinus debrider instrument to facilitate the removing of cut tissue from the sinus, said step of supplying fluid including supplying fluid from the fluid passage directly to the tissue cutting surface. | |

*Status*:       Agreed

*Source*:       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 6.6 (adapted).

## PATENT INFRINGEMENT

### 3.1    Patent Infringement, Generally—Direct Infringement

An owner of a patent having method claims has the right to stop others from practicing the method recited by the claims during the life of the patent. If any person practices the method recited by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to asserting a patent against an alleged direct infringer, a patent owner may also assert the patent against those who are alleged to be "indirect infringers."

Only the claims of a patent can be infringed.  In this case, you must compare patent claims 1-3, as I have defined them, to the use of Gyrus's debrider systems and determine whether or not there is infringement.  You should not compare the method of using Gyrus's debrider systems with any specific example set out in the 957 patent, or with the method of using Xomed's debrider systems.  Further, you should not determine infringement by comparing Gyrus's debrider systems to Xomed's debrider systems.  The only correct comparison is the use of Gyrus's debrider systems with the language of the claims themselves, with the meanings I have given you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.  I will first discuss direct infringement.

In this case, Xomed asserts when sinus surgeons use the Gyrus debrider systems in sinus surgery, such use directly infringes claims 1-3 of the 957 patent.  It is your job to determine whether or not Xomed has proved by the more probable than not standard that the use of Gyrus's debrider systems in sinus surgery by sinus surgeons directly infringes any of claims 1-3 of the 957 patent.

> *Status*:        Disputed
>
> *Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.1.

## 3.2     Literal Infringement

In order to literally infringe a method claim, the accused method must literally include every limitation of the claim.  In this case, if the use of Gyrus's debrider systems in sinus surgery

omits a single element or step recited in a claim, then you must find that such use does not infringe that claim. As I stated, you must consider each of the patent claims separately.

A claim limitation of a method claim is present in an accused method if it exists in the accused method just as it is described by the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

*Status*:     Disputed

*Source*:     ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.2.

**3.3     Determination of Infringement**

Taking each claim of the 957 patent separately, if you find that Xomed has proved that it is more probable than not that each and every limitation of the claim, as construed by the Court, occurs when a sinus surgeon performs sinus surgery using a Gyrus debrider system, then you must find that such use by a sinus surgeon infringes that claim. For example, for the use of Gyrus's debrider systems to infringe claims 1-3 of the 957 patent, you must find that the fluid in the Gyrus debrider systems remains essentially within the systems when used in sinus surgery.

*Status*:     Disputed

*Source*:     ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.7.

**3.4     Infringement of Dependent Claims**

My instructions on infringement so far have related to independent claims. The 957 patent also contains dependent claim 2. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that independent claim 1 of the 957 patent has been infringed by the use of the Gyrus debrider systems in sinus surgery by sinus surgeons, you must separately determine

whether dependent claim 2 has also been infringed. If you find that independent claim 1 is not infringed, then you must also find that dependent claim 2 is not infringed.

*Status*:          Agreed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.10.

**3.5      Indirect Infringement**

In addition to asserting a patent against an alleged direct infringer, a patent owner may also assert the patent against alleged indirect infringers. There are two types of indirect infringement: contributory infringement and inducing infringement. The act of contributing to the infringement of others by, for example, supplying them with components intended solely for use in the method recited by the patent claims, is called "contributory infringement." The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

There can be no indirect infringement in this case unless someone is directly infringing the 957 patent claims. Thus, in order to prove that Gyrus is contributing to infringement by another person or inducing another person to infringe, Xomed must prove that it is more probable than not that the other person is directly infringing at least one claim of the 957 patent.

In this case, Xomed accuses Gyrus of contributing or inducing to the infringement of claims 1-3 of the 957 patent. Xomed must prove that it is more probable than not that Gyrus has contributed or induced to the infringement of those claims.

*Status*:          Disputed

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.12.

**3.5.1   Contributory Infringement**

Contributory infringement can occur when a supplier provides a device to another for use in a patented process under certain circumstances that I will discuss. In order for there to be contributory infringement, the person who received the device must use the device to infringe the

patent. The device must have certain characteristics. First, the device must be a material part of the invention recited by the claims. Second, the device must be especially made or adapted for use in a manner that infringes the patent claims, and the supplier must know that the device was especially made for that use. Third, the device must not have a substantial use that does not infringe the patent claims, which is called a "substantial non-infringing use." A "substantial non-infringing use" means an actual use that is not occasional or aberrant.[2] Providing a device that has a substantial non-infringing use is not contributory infringement, even if the person to whom the device was supplied uses it in an infringing manner.

In this case, Xomed asserts that Gyrus's selling or supplying the Gyrus debrider systems contributed to the infringement of claims 1-3 of the 957 patent. In order to establish that Gyrus has contributorily infringed those claims, Xomed must prove five things by the more probable than not standard:

First, Gyrus knew of the 957 patent.

Second, the Gyrus debrider systems are a material component of the invention recited by claims 1-3 of the 957 patent.

Third, Gyrus knew that the intended use of the Gyrus debrider systems would infringe the 957 patent claims.

Fourth, the Gyrus debrider systems have no substantial non-infringing uses.

Fifth, the Gyrus debrider systems were actually used in a manner that you find infringes the patent.

If each of these five things are proven by Xomed, you should find that Gyrus contributed to the infringement of the 957 patent claims.

---

[2] *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 630 F. Supp. 463, 471 n.10 (E.D. Pa. 1985), *aff'd, in relevant part*, 803 F.2d 1170 (Fed. Cir. 1986)

*Status:*       Disputed

*Source:*       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.12.2.

### 3.5.2   Inducing Patent Infringement

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. Thus, to induce infringement of the 957 patent, Gyrus had to have the specific intent both to encourage surgeons to use the Gyrus debrider systems such that the fluid remains essentially within the systems and to cause such surgeons to infringe the patent claims.[3] This is different from direct infringement, which can occur unintentionally.

Xomed asserts that Gyrus induced infringement of the 957 patent claims. To prevail, Xomed must prove four things by the more probable than not standard:

First, Gyrus encouraged or instructed surgeons to use the Gyrus debrider systems in a way that you, the jury, find infringes the 957 patent claims.

Second, Gyrus knew of the 957 patent.

Third, Gyrus knew or should have known that its encouragement or instructions to sinus surgeons would likely result in the sinus surgeon doing that which you find to be an infringement of the 957 patent claims.

Fourth, the sinus surgeons infringed the 957 patent claims.

---

[3] The Federal Circuit has sometimes avoided addressing whether violation of § 271(b) requires only an intent to induce the infringing acts or also an intent to induce the infringement of the patent. *See MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 n.4 (Fed. Cir. 2005). However, most Federal Circuit opinions on this point have required both intents. *See, e.g., Minn. Mining & Mfg. Co. v. Chemque, Inc.* 303 F.3d 1294, 1305 (Fed. Cir. 2002) ("In order to succeed on a claim of inducement, the patentee must show ... that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). The primary case cited to support the sufficiency of only an intent to cause the acts is *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). However, *Hewlett-Packard* is not in conflict with the other Federal Circuit decisions, as it merely held an intent to cause the acts was required, but not proven in the case before it, thus presenting no occasion to address any intent to cause the infringement. *See Applera Corp. v. MJ Research Inc.*, 72 USPQ2d 1438, 1441 (D. Conn. 2004).

If each of these four things are proven by Xomed, you should find that Gyrus induced infringement of the 957 patent claims.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 7.12.1.

### 3.6    Willful Infringement

Xomed asserts that Gyrus has willfully infringed the 957 patent claims. If you find, on the basis of the evidence and the law as I have explained it, that use of the Gyrus debrider systems by sinus surgeons literally infringes one or more of the 957 patent claims and that Gyrus indirectly infringed at least one claim of the 957 patent, you must then decide whether or not Gyrus's infringement was willful.  The issue of willful infringement is not relevant to your decision of whether or not there is infringement.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and to investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not exercise due care and conduct an investigation and is found to have infringed any of the patent claims, then the infringement was willful.

Although, as I explained before, Xomed must prove infringement by the more probable than not standard, willful infringement must be proven by the highly probable standard.  To establish willful infringement, Xomed must prove it is highly probable that Gyrus acted recklessly in wanton disregard of Xomed's patent rights.[4]  It would not be enough for Xomed to prove that Gyrus was merely negligent.

*Status*:        Disputed

---

[4] *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *Graco Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 794 (Fed. Cir. 1995); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

*Source*:          ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 8.

**3.6.1  Reliance on Advice of Counsel**

A company is not guilty of willful patent infringement if it reasonably relies upon the advice of counsel that the patent at issue is either invalid or not infringed. Gyrus contends that it relied upon such advice in this case.

Since Xomed has the burden of proof, it must show that it is highly probable either that Gyrus did not in fact rely upon the opinions of its counsel, or that the opinions were so incompetent that no reasonable company could rely upon them.

On this last point, it is not enough for Xomed to show that the opinions of Gyrus's counsel were incorrect. Xomed must prove that the opinions were so obviously bad, that no reasonable company could rely upon them. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity, enforceability and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

*Status*:          Disputed

*Source*:          *Knorr Bremse Systems v. Dana Corp.,* 383 F.3d 1337 (Fed. Cir. 2004).

**3.6.2  Willfulness Under All the Circumstances**

If Xomed proves it is highly probable that Gyrus did not reasonably rely upon an opinion of counsel, then you should consider the totality of the circumstances to determine if Gyrus willfully infringed the 957 patent. In that event, whether or not Gyrus reasonably relied on an opinion of counsel is simply one fact to consider, with all the evidence.

Another factor you should consider in determining willfulness is whether or not, in designing and developing the method accused of infringement, Gyrus copied the disclosures of the 957 patent, or whether or not Gyrus instead tried to "design around" the patent by designing

and developing a method that Gyrus believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Gyrus attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that the infringement was not willful.

The fact that you may have determined that Gyrus was wrong and that the 957 patent is infringed does not mean that Gyrus's infringement was willful. All that is required to avoid a finding of willful infringement is that Gyrus had a good faith belief, which belief was reasonable under all of the circumstances, that it did not infringe, that the patent was invalid, and/or that the patent was unenforceable.

<div style="margin-left:2em">

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 8.

</div>

## VALIDITY

### 4.1    Validity—in General

Only a valid patent may be infringed. For a patent to be valid, the invention recited by the claims must be new and nonobvious, among other things. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you when we discuss Gyrus's invalidity contentions.

The invention recited by the claims must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Gyrus challenges the validity of the 957 patent claims on a number of grounds.  Gyrus must prove that a patent claim is invalid by the highly probable standard.

I will now explain to you each of Gyrus's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

*Status*:        Agreed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.

## 4.2     The Prior Art

As I stated, under the patent laws, a person is entitled to a patent only if the invention recited by its claims is new and non-obvious in light of what came before the invention.  That which came before the invention is referred to as the "prior art."  In this case, Gyrus relies on the Frost article, the Frost patent, the Hummer article and debrider, and the invention of Robert Mericle as prior art.  Xomed disputes that the Hummer article and the invention of Robert Mericle are prior art.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.3.

## 4.2.1   Prior Art—Date of Invention

Many of the different categories of prior art refer to the date when the invention was made.  Prior art that existed before this invention date is prior art to the patent claims.

Under the patent laws, Xomed's date of invention is the date that the patent application was filed, unless Xomed proves an earlier date of invention.  In this case, that date is April 17, 1995, the date the first application was filed that led to the 957 patent.

As I stated, the applicants can prove a date of invention earlier than the application filing date.  This may occur in two circumstances.  Before we discuss these two circumstances, we need to discuss the process of making an invention.  There are two parts to the making of an

invention.  First, the inventor has the idea of the invention.  This is referred to as "conception" of the invention.  A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort.  Second, the actual making of the invention is referred to as "reduction to practice."  An invention is said to be actually "reduced to practice" when it is made and shown to work for its intended purpose.  It is not necessary that the inventor personally reduce the invention to practice.  Others can reduce it to practice using his conception, e.g., others can build and commercialize it.  The filing of a patent application is called a "constructive" reduction to practice.

Let's go back to the two circumstances in which an applicant can prove an invention date prior to the application filing date.  The first occurs when the invention was actually reduced to practice before the application filing date.  In this circumstance, the reduction to practice date is the date of invention.  The second circumstance occurs when the inventor conceived of the invention before the application filing date and exercised reasonable diligence up to the date of the inventor's reduction to practice.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

In this case, for Xomed to prove that it is entitled to an invention date before April 17, 1995, Xomed must prove that it: 1) conceived of the invention before April 17, 1995; and 2) acted diligently in reducing the invention to practice, through either the date of actual reduction

of the invention to practice or the date of constructive reduction of the invention to practice by

filing its patent application on April 17, 1995.[5]

Proof of a date of invention prior to the filing date of the patent application requires

corroboration.[6]   Corroborative evidence includes physical, documentary and circumstantial

evidence, as well as reliable testimony from individuals other than the true inventor or other

interested parties.[7]  The corroborative evidence should be considered as a whole, and the rule of

reason applied to determine whether the evidence corroborates the inventor's testimony regarding

conception.[8]

> *Status*:        Disputed
>
> *Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.3.1.

## 4.2.2   Prior Art—Prior Invention

An invention made by another person before the patent applicant(s) allegedly made the

invention is prior art to the patent claims, unless that other person abandoned, suppressed or

concealed his or her invention.

Gyrus contends that the invention recited by the 957 claims was first made by Mr. Robert

Mericle.  Gyrus must prove by the highly probable standard that Mr. Mericle made such an

invention, prior to any invention by the applicants of the 957 patent.

Remember our discussion of conception and reduction to practice.  Someone who was

first to conceive of an invention but reduced it to practice after someone else will be the first

inventor if he or she exercised "reasonable diligence" in reducing the invention to practice from a

time beginning just before the other person's conception.  Reasonable diligence means that the

---

[5] 37 C.F.R. § 1.131(b).
[6] *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).
[7] *Checkpoint Systems*, 412 F.3d at 1339; *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001).
[8] *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993).

inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

Let's consider an example. Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1. Ms. Jones invents the same table. Ms. Jones conceived of the table on January 1, one month before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table from the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims. Of course, the same would be true if they reduced the invention to practice on the same day.

The final requirement for a prior invention to be prior art is that the prior inventor not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, Gyrus contends that Robert Mericle's conception, as later reduced to practice by Mr. Mericle or Xomed, was a prior invention to the 957 patent claims. Gyrus contends that Mr. Mericle did not abandon suppress or conceal his invention because he communicated it to Xomed, it was disclosed at least at the April 15, 1994 ENTech meeting, and he worked with Xomed to commercialize his invention.

*Status*:      Disputed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.3.9.

## 4.3    Derivation

The inventorship of a patent is determined by its claims:  who conceived the invention recited by the claims?[9]  Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that the invention be made, without the need for further inventive effort.  A person is the sole inventor if he or she conceived the invention as a whole.

To be a co-inventor, one must make a contribution to the conception of one or more claims of the patent.[10]  Persons may be co-inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent.  However, merely helping with experimentation by carrying out the inventor's instructions or explaining well-known concepts or the current state of the art does not make someone a co-inventor.

The patent laws require that the patent applicants be the true inventors of the invention recited by the patent claims.  A patent claim is invalid if the applicants did not by themselves invent the subject matter of the claim.[11]  The patent applicants are not the true inventors if they "derived" the invention from someone else, in whole or in part.  An invention is said to be "derived" from another person if that other person conceived of the patented invention, or a significant aspect of the patented invention,[12] and that conception was communicated to the patent applicant.

---

[9] *See Linear Technology Corp. v. Impala Linear Corp.*, 72 USPQ2d 1065, 1076 (Fed. Cir. 2004); *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302-1303 (Fed. Cir. 2002); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

[10] *Trovan Ltd. v. Sokymat SA*, 299 F.3d 1292 (Fed. Cir. 2002); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

[11] *Checkpoint Systems, Inc. v. All-Tag Security S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005).

[12] *Checkpoint Systems, Inc. v. All-Tag Security S.A.*, 412 F.3d 1331, 1337-38 (Fed. Cir. 2005); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998).

Proof of inventorship requires corroboration.[13]  Corroborative evidence includes physical, documentary and circumstantial evidence, as well as reliable testimony from individuals other than the true inventor or other interested parties.[14]   In determining whether the evidence corroborates the inventor's testimony regarding conception the corroborative evidence should be considered as a whole.[15]

In this case, Gyrus contends that claims 1-3 of the 957 patent are invalid because the 957 patent applicants derived the invention of those claims from Mr. Robert Mericle.  That is, Mr. Mericle conceived the invention recited by the 957 patent claims before the applicants, or a significant aspect of the 957 patent claims, and Mr. Mericle's conception was communicated to the applicants.  Gyrus also contends that Mr. Mericle should have been named as a co-inventor of Xomed's U.S. Patent Nos. 5,685,838 and 5,957,881, which were earlier patents that issued from the chain of applications that led to the 957 patent.

If you find that Gyrus has proved that it is highly probable that the 957 patent applicants derived the invention covered by claims 1-3, or a significant aspect of claims 1-3, from Mr. Mericle (in other words, that Mr. Mericle is the sole inventor or a joint inventor), then you must find that the claims are invalid.

*Status*:      Disputed

*Source*:     ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.4;
                  Model Patent Jury Instruction 4.3c for the Northern District of California

---

[13] *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).
[14] *Checkpoint Systems*, 412 F.3d at 1339; *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001).
[15] *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993).

## 4.4    Anticipation/Lack of Novelty

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new to be patentable. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the highly probable standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. An anticipatory reference can be from an entirely different field of endeavor than that of the invention recited by the claims.[16] You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art, always results from the practice of the prior art, or is a natural result of the teachings of the prior art. Inherency is determined from the perspective of a person skilled in the field of the invention.[17] For a finding of inherency it is not necessary that the person skilled in the field recognize the inherent feature at the time of the prior art disclosure.[18]

---

[16] *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997)
[17] *Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377-79 (Fed. Cir. 2003) ("In general, a limitation or the entire invention is inherent and in the public domain if it is the "natural result flowing from" the explicit disclosure of the prior art. *See Eli Lilly &Co. v. Barr Labs., Inc.*, 251 F.3d 955, 970 (Fed. Cir. 2001); *see also In re Kratz*, 592 F.2d 1169, 1174 (CCPA 1979) (suggesting inherent anticipation of a compound even though the compound's existence was not known)").
[18] *Id.* at 1377.

In this case, Gyrus contends that claims 1-3 of the 957 patent are invalid because they are anticipated by the Frost article and/or the Frost patent. That is, Gyrus contends that all of the elements and steps of the 957 patent claims are explicitly or inherently disclosed by the Frost article and/or the Frost patent. If you find that Gyrus has proved that it is highly probable that claims 1-3 are anticipated by the Frost article and/or the Frost patent, then you must find that the claims are invalid.

> *Status*:    Disputed

> *Source*:    ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.6.

## 4.5    Obviousness

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art together. The question is, would it have been obvious for a skilled person who knew of all of the prior art to make the invention recited by the claims? If the answer to that question is yes, then the patent claims are invalid. Gyrus has the burden of proving by the highly probable standard that claims 1-3 of the 957 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the invention recited by the claims would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention recited by the claims would have been obvious to a person of ordinary skill in the field of the invention. In making that determination, you can consider the

testimony of qualified witnesses, regardless of whether they were practicing in the art at the time.[19]

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not patent claims would have been obvious in view of the prior art, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of nonobviousness?

Against this background, you must decide whether or not the invention covered by the 957 patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the invention recited by the 957 patent claims would have been obvious.

*Status:*      Disputed

*Source:*      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.

---

[19] *National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1338-39 (Fed. Cir. 2004) (testimony of two witnesses of less than ordinary skill found probative); *Forbro Design Corp. v. Raytheon Co.*, 532 F.2d 758, 762 (1st Cir. 1976) (some expertise at time and full expertise later found qualified); *Sims v. Mack Trucks, Inc.*, 459 F. Supp. 1198, 1214 (E.D. Pa. 1978) (accepting testimony of an expert who was not of ordinary skill at the time of invention, but later acquired expertise; rejecting other experts); *rev'd in part and vacated in part*, 608 F.2d 87, 92-93 (3d Cir. 1979) (reversing finding of nonobviousness and finding defendants' experts qualified under a broader definition of ordinary skill).

**4.6     The Scope and Content of the Prior Art**

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Gyrus.

The person of ordinary skill does not have to have actual knowledge of the prior art. Rather, for purposes of your obviousness determination, it is presumed that the person of ordinary skill knows of all the prior art.[20]

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.1.

**4.7     Differences between the Invention of the Claims and the Prior Art**

In determining the differences between the invention recited by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the invention recited by the claims as a whole and determine whether or not it would have been obvious in light of all of the prior art from the perspective of one skilled in the art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination recited by the patent claims. There are three *separate* sources of motivation to combine prior art references:  (1) explicit or implicit teachings in the prior art; (2) the knowledge of one of ordinary skill in the art; and (3) the nature of the problem to be solved.[21]

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.2.

---

[20] *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985); *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988).
[21] *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1221-22 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 959 (2004); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir. 2000).

**4.8     Level of Ordinary Skill**

Obviousness is determined from the perspective of a person of ordinary skill in the art. As stated, this person is presumed to know all of the prior art, not just what the applicants may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem. Where the level of skill is high, you can assume that one skilled in the art would have a keener appreciation of the prior art and how the prior art could be modified.[22]

Xomed and Gyrus agree that a person of ordinary skill in the field of sinus surgery is a physician who has:  1) received a medical degree from a medical school and is licensed to practice medicine by a state government; 2) completed a five year residency that involved sinus surgery; 3) been Board Certified by the American Board of Otolaryngology (this requires passing an examination in Ear, Nose, and Throat (ENT) surgery administered by the Board); and 4) been credentialed by a hospital to practice sinus surgery. Qualified witnesses can testify to the understanding of those of ordinary skill in the field regardless of whether they were practicing in the field at the time of the invention.[23]

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.3.

**4.9     Objective Indications Concerning Obviousness**

You also must consider any evidence relating to what are referred to as objective indications of nonobviousness. Some of the possible indications of nonobviousness are:

1. Commercial success of products or methods covered by the patent claims.

---

[22] *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("Where the level of skill is high, one may assume a keener appreciation of nuances taught by the prior art.").
[23] *Forbro Design Corp. v. Raytheon Co.*, 532 F.2d 758, 762 (1st Cir. 1976).

2.  A long-felt need for the invention recited by the claims.

3.  Failed attempts by others to make the invention recited by the claims.

4.  Copying of the invention recited by the claims by others in the field.

5.  Unexpected results achieved by the invention recited by the claims.

6.  Praise of the invention recited by the claims by the infringer or others in the field.

7.  The taking of licenses under the patent by others.

8.  Expressions of surprise by experts and those skilled in the art at the making of the invention recited by the claims.

9.  The patentee proceeded contrary to the accepted wisdom of the prior art.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  For example, commercial success is relevant to obviousness only if the success of the product is connected to the features claimed in the patent.  If the commercial success is the result of something else unrelated to the features that are claimed, such as marketing or advertising, then you should not consider it to be an indication of nonobviousness.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.4.

## 4.10    Determination of Obviousness

Gyrus contends that claims 1-3 of the 957 patent would have been obvious to a person of ordinary skill in the field of the invention at the time of the invention for three reasons.

First, Gyrus contends that those claims would have been obvious to one of ordinary skill at that time because it would have been obvious to use the Frost debrider in sinus surgery, in

view of the Frost <u>article</u> and the prior art use of the Hummer debrider in sinus surgery (such as disclosed in the Hummer article).

Second, Gyrus contends that those claims would have been obvious to one of ordinary skill at that time because it would have been obvious to use the Frost debrider in sinus surgery, in view of the Frost <u>patent</u> and the prior art use of the Hummer debrider in sinus surgery (such as disclosed in the Hummer article).

Third, Gyrus contends that those claims would have been obvious to one of ordinary skill at that time because it would have been obvious to use the annular space in the Hummer debrider as a fluid passage to supply fluid to the tissue cutting surface, in view of the prior art use of the Hummer debrider in sinus surgery (such as is disclosed in the Hummer article) and the use of the annular space as a fluid passage to supply fluid to the tissue cutting surface as shown in the Frost debrider in either the Frost patent or Frost article.

Each one of Gyrus's contentions stands by itself and forms an independent basis for obviousness. If you find that Gyrus has proved obviousness by the highly probable standard for any one or more of these reasons, then you must find that the claims are invalid for obviousness. That standard may be met more easily through non-considered prior art that is more pertinent than the prior art which was considered by the examiner during examination of the patent application.[24]

*Status*:      Disputed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.8.5.

---

[24] *E.g.*, *Sibia Neurosciences*, 225 F.3d at 1355-56; *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1423 (Fed. Cir. 1988); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1358, 1359-60 (Fed. Cir. 1984); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984).

**4.11    Written Description**

In a patent containing method claims, the patent must contain a written description of the method recited in the claims.  In order to satisfy this written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.

Gyrus contends that claims 1-3 of the 957 patent are invalid for lack of an adequate written description of the invention recited by claims 1-3.  Specifically, Gyrus contends that the 957 patent does not describe the aspect of the 957 patent claims requiring that fluid be supplied to the tissue cutting surface "such that fluid remains essentially within the instrument."  Gyrus contends that the 957 patent teaches the opposite, that the fluid should exit the instrument and irrigate the surgical site.  If you find that Gyrus has proved that it is highly probable that the 957 patent does not describe that the fluid should remain essentially within the instruments, then you must find that the claims are invalid.

*Status*:        Disputed

*Source*:       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 9.1.1.

## INEQUITABLE CONDUCT

**5.1    Inequitable Conduct—in General**

After a patent application is filed with the Patent Office, it is assigned to an Examiner, who examines the application and attempts to determine whether or not the application, including its claims, meets all of the requirements of the patent laws.

In conducting this examination, the Examiner must consider the description of the invention in the application, which may involve highly technical subject matter, and search for and consider the prior art.  The Examiner has only a limited amount of time and resources

available and, therefore, must rely on information provided by the applicant with respect to the technical field of the invention and the prior art.

Because the Patent Office must rely on the patent applicant for information, applicants for patents have a duty of honesty and good faith in their dealings with the Patent Office. Persons who have this duty of honesty and good faith include the applicants named on the patent application, persons who represent the applicants before the Patent Office (such as their attorneys) and other persons. The persons who are subject to the duty include everyone who is substantively involved with the preparation or prosecution of the application and who is associated with the inventor or the inventor's company.[25] The knowledge and actions of an applicant's representatives are chargeable to the applicant.[26]

This duty of honesty and good faith exists from the time the application is filed and continues for the entire time that an application is pending before the Patent Office, from its filing to its issuance as a patent. It requires that the applicant, the applicant's representatives and attorneys, and others involved in a substantial way with the application fully disclose to the Patent Office all information of which they are aware that is material to examination of the application, including all material prior art. I will explain to you in a moment how you may determine whether or not information is material. This duty of honesty and good faith also covers all statements made to the Patent Office on behalf of the applicants, including by their attorneys. All such statements made to the Patent Office must be true and not misleading.

Intentional failure to fulfill this duty of honesty and good faith is called inequitable conduct. When inequitable conduct occurs during the course of obtaining a patent, the patent is

---

[25] 37 C.F. R. § 1.56(c).
[26] *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 n.6 (Fed. Cir. 1995); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987).

unenforceable.   This means that the patent owner may not prevent others from using the invention recited by the claims of the patent and may not collect damages for any alleged patent infringement.

> *Status*:        Disputed

> *Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 10.1.

**5.2   Gyrus's Inequitable Conduct Contentions**

Gyrus contends that the following material information was intentionally withheld from the Patent Office:

1.      The Frost Patent.

2.      The prior art use of the Hummer debrider in sinus surgery, including as disclosed in the Hummer article.

3.      Mr. Mericle's March 2, 1994 drawing.

4.      Mr. Mericle's inventorship or joint inventorship of the claims of the 957 patent; and

5.      Mr. Mericle's joint inventorship of the claims of the 838 and 881 patents.

Gyrus also contends that Xomed's attorney, Mr. Epstein, made a misleading statement in making an argument for patentability of the 957 patent claims.

Gyrus has the burden of proving inequitable conduct by the highly probable standard. Gyrus must prove that one or more of the 957 patent applicants, their attorneys or the Xomed employees involved in a substantial way with the application withheld or misrepresented information that was material to the examination of the 957 patent application, and that such person or persons acted with an intent to deceive or mislead the Patent Examiner.

I will now explain to you the requirements of materiality and intent.

*Status*:        Disputed

*Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 10.1
(adapted).

**5.3    Materiality**

In considering the issue of materiality, you must first determine whether or not information was withheld from or misrepresented to the Patent Office. If you find that the applicants, their attorneys, or others involved in a substantial way with the application withheld or misrepresented information when applying for the 957 patent, you must then determine whether or not that information was material.

Information is material if there is a substantial likelihood that a reasonable Patent Examiner would consider it important in deciding whether or not to allow the application to issue as a patent. Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application more likely than not does not meet one of the requirements for a patent, such as the requirements that the invention recited by the claims be new and nonobvious. Information is also material if it refutes or is inconsistent with information provided or arguments made to persuade the Patent Examiner that the application should issue as a patent.

Information that is cumulative of, that is, that adds little to other information the Patent Examiner already had, is not material. A single reference that combines the teachings of two prior art references is not cumulative. The single reference is material prior art because it combines in one source the information that the Patent Examiner would have had from two separate sources.[27]

---

[27] *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995).

After determining the materiality of the withheld information or misleading statement, you must next consider whether or not there was an intent to mislead or deceive the Patent Office.

*Status*:       Disputed

*Source*:       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 10.2.

## 5.4    Intent

Evidence relevant to the intent to deceive or mislead the Patent Office includes any direct evidence of intent, as well as all evidence from which intent may be inferred. The patent law recognizes that direct evidence of an actual intent to deceive or mislead is rarely available. You may, however, infer the intent from the conduct of the applicants, their attorneys and others involved in a substantial way with the application. That means you may conclude that such a person intended the foreseeable results of his or her actions. You should decide whether or not to infer an intent to deceive or mislead based on the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith. The requisite intent can be found from this inference alone.[28]

Among the principles and factors you should take into account in making such determination, if applicable, are the following:

1.      Applicants represented by counsel, such as in this case, are presumed to know the law, including the obligation to disclose material information to the Examiner.[29]

---

[28] *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.3d 28, 32 (Fed. Cir. 1999).

[29] *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1385 (Fed. Cir. 2001) ("knowledge of the law is chargeable to the inventor"; "We reiterate that inventors represented by counsel are presumed to know the law."). *See also Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1361-62 (Fed. Cir. 2005) ("Novo asks us to hold, on the one hand, that the failure of Dr. Christensen and his co-inventors to disclose the truth about Example 1 to Novo's attorneys absolves them of their duty to disclose this information to the PTO or the Board, because without their attorney's consultation, they could not have known that this information was material. At the same time, Novo asks us to hold that its counsel's failure to disclose the truth about Example 1 to

2.     A person who knows of prior art information that is material cannot intentionally avoid learning of its materiality, even through gross negligence.  In such a circumstance, you should consider whether the person should have known of the materiality of the prior art.[30]

3.     There is ordinarily no obligation to search for prior art or other material information not already known.  However, if a person subject to a duty to disclose is on notice of the likelihood that material information may exist that should be disclosed, then the person has a duty to meaningfully investigate such facts to determine whether such information actually exists.[31]

4.     Whether the applicants have provided a credible explanation for withholding the material information.[32]

5.     The submission of prior art to the FDA for purposes of obtaining FDA approval of one's product or process, and calling this prior art "substantially equivalent" to one's product

---

the PTO or Board is excused because the inventors failed to fully inform them of the details surrounding Example 1. As we have done in similar situations in the past, we reject the "circular logic" of this request.").

[30] *See Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*, 394 F.3d 1348, 1352 (Fed. Cir. 2005) ("Bruno's distinction is not persuasive because "an applicant who knew of the art or information cannot intentionally avoid learning of its materiality ...it may be found that the applicant 'should have known' of that materiality." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)"); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information.").

[31] *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1382-83, 1385 (Fed. Cir. 2001) ("sufficient information must be presented to the attorney to suggest the existence of specific information the materiality of which may be ascertained with reasonable inquiry"; "no duty to inquire arises unless counsel is on notice of the likelihood that specific, relevant, material information exists and should be disclosed"; "Once an attorney, or an applicant, has notice that information exists that appears material and questionable, that person cannot ignore that notice in an effort to avoid his or her duty to disclose."; "Attorneys must conduct meaningful inquiries when the surrounding factual circumstances would cause a reasonable attorney to understand that relevant and questionable material information be assessed."); *FMC Corp. v. Hennessy Industries, Inc.*, 836 F.2d 521, 5 USPQ2d 1272 (Fed. Cir. 1987).

[32] *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006) ("Suffice it to say that we have recognized, in cases such as *Paragon,* that summary judgment is appropriate on the issue of intent if there has been a failure to supply highly material information and if the summary judgment record establishes that (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding. *See Bruno Indep. Living Aids,* 394 F.3d at 1354; *Critikon, Inc.,* 120 F.3d at 1257.").

or process, while not disclosing this same prior art to the Patent Office with regard to a patent application claiming the product or process.[33]

> *Status*:      Disputed
>
> *Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 10.3 (with specific factors relevant to case supplied from caselaw).

## 6.    Deliberation And Verdict

That concludes the part of my instructions explaining the rules for considering the testimony and other evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[33] *Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005).

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the bailiff.  The bailiff will then give them to me, and I will respond as soon as I can either in writing or by having you brought into the Courtroom so that I can address you orally.  I may have to talk to the attorneys about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split [4-4, or 5-3], or whatever your vote happens to be.  That should stay secret until you are finished.

*Status*:        Agreed

*Source*:        Agreed Jury Instruction No. 29 from *Mitutoyo Corp. v. Central Purchasing, Inc.*, Civ. Action No. 03C 0990 (N.D. Ill.)

*Authority*:     5th Cir. Pattern Jury Instruction 2.11 and 2.12 (2004).

## PRE-DAMAGES EVIDENCE INSTRUCTIONS

Xomed claims that it has suffered damages as a result of Gyrus's infringement in the form of lost profits that Xomed would have made if Gyrus had not infringed and/or a reasonable royalty on Gyrus's sales of its irrigating sinus blade for use with its debriders. Xomed must prove the damages it suffered as a result of Gyrus's infringement by the more probable than standard.

There are two types of possible damages for patent infringement.

The first type of patent damages is lost profits. Briefly, lost profits damages compensate the patent owner for the profits that it would have made if the accused infringer had not infringed. The second type of patent damages is called a reasonable royalty. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and that the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover under the patent laws.

I will explain to you at the end of the damages case in more detail how lost profits are calculated and how a reasonable royalty is determined.

> *Status*:        Agreed
>
> *Source*:        ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 3.1.3
>                      (adapted).

## POST-EVIDENCE DAMAGES INSTRUCTIONS

1.    **Two Types of Damages—Lost Profits and Reasonable Royalty**

There are two types of possible damages for patent infringement.

The first type of patent damages is lost profits. Briefly, lost profits damages compensate the patent owner for the profits that it would have made if the accused infringer had not infringed. You may have heard this referred to as the "but for" test. I will discuss lost profits damages in more detail shortly.

The second type of patent damages is called a reasonable royalty. I will also discuss a reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and that the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover under the patent laws.

*Status*:      Agreed

*Source*:      ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.4.

2.    **Lost Profits—in General**

I will first instruct you about lost profit damages. Xomed asserts that it lost profits because Gyrus's infringement took away sales of irrigating sinus blades that Xomed would have made. Xomed has the burden to show that it was more probable than not that it would have made these lost profits if Gyrus had not infringed.

To recover lost profits damages, the patent owner must prove that "but for" the infringement, the patent owner would have made the sales made by the infringer. One way in which a patent owner can prove entitlement to lost profits is by satisfying the *Panduit* test, which requires that the patent owner prove: (1) a demand existed for the patented product; (2) there

were no acceptable non-infringing substitutes; (3) the patent owner had the additional manufacturing and marketing capability to make and sell the quantity of the infringing product made and sold by the infringer; and (4) the amount of profit the patent owner would have made.

*Status*:       Disputed

*Source*:       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.5.

3. **Absence of Available, Acceptable Non-infringing Substitutes - Second *Panduit* Factor**

In determining whether Xomed should receive lost profits damages for Gyrus's sales of its irrigating sinus blades, you must consider whether or not, if Gyrus's sinus debriders were not available, some or all of the sinus surgeons who used the Gyrus debrider systems would have used a different, non-infringing debrider system. If so, then Xomed is not entitled to receive lost profits damages for Gyrus's sales of its irrigating sinus blades.

The different, non-infringing debrider system can be an existing system actually on sale or a system that was otherwise available during the infringement period. To establish that an acceptable, non-infringing substitute was otherwise available during the time of the alleged infringement, it must be demonstrated that all of the necessary materials were readily available during that time, the technology involved was well known during that time and the accused infringer had the equipment, know-how and experience to make the different, non-infringing system.[34] It must also be demonstrated that the substitute was an acceptable alternative for consumers in the relevant market.[35]

Gyrus contends that the Linvatec debrider system used in sinus surgery, the Stryker debrider system used in sinus surgery, the Diego alternative design debrider system, and the use

---

[34] *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353-54 (Fed. Cir. 1999).
[35] *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1355 (Fed. Cir. 1999).

of sinus debrider systems in sinus surgery without using the irrigating feature are available, acceptable non-infringing alternatives.  It is Xomed's burden to prove that each of these was <u>not</u> an available, acceptable non-infringing alternative.

> *Status*:       Disputed
>
> *Source*:       ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.6.2.

## 4.       Market Share Lost Profits

Under the "market share" test, a patent owner may recover lost profits, even though acceptable non-infringing substitutes exist, for a patent owner's market share of the infringing sales.  As with other lost profits issues, such market share data must be based on sound economic evidence.  Sound economic evidence means reliable economic evidence of "but for" causation of lost profits, such as market research and recognized economic principles, taking into account the nature of the market and likely outcomes, with infringement factored out of the economic picture.

> *Status*:       Disputed
>
> *Source*:       *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1376-78 (Fed. Cir. 2003);
>                 *Crystal Semiconductor Corp. v. Tritech Microelectronics International,*
>                 *Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001).

## 5.       Lost Profits - Xomed's Increased Placements Assertion

Xomed also asserts that it should receive additional profits damages because it allegedly increased the placements of its debrider system capital equipment to match Gyrus's increased placements of its Diego debrider system capital equipment.  Xomed seeks these additional lost profits for its fiscal years 2004-2006.  To recover these additional lost profits, Xomed must establish by sound economic evidence (1) a cause and effect relationship between the Diego placement sales and Xomed's placement rate during its fiscal years 2004-2006 and (2) the

amount of the damages caused by such proven extra placements.  That is, Xomed must establish, by sound economic evidence, the "but for" test as to these additional damages, including that Xomed would not have increased its placement rate for any reason other than Gyrus's infringement.

> *Status*:      Disputed
>
> *Source*:      *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001).

## 6.    Lost Profits - Convoyed Sales

Xomed also asserts that it should receive lost profit damages based on the adenoid blades, laryngeal blades and sinus burs sold by Gyrus.  Xomed may receive lost profits damages only on the products that compete with Gyrus's irrigating sinus debrider blades.  Xomed may not receive lost profit damages for other products that might be sold along with the irrigating sinus debrider blades for convenience or business advantage, but that do not function with irrigating sinus blades so as to produce a desired end product or result.

> *Status*:      Disputed
>
> *Source*:      *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995) (en banc) ("Thus, the facts of past cases clearly imply a limitation on damages, when recovery is sought on sales of unpatented components sold with patented components, to the effect that the unpatented components must function together with the patented component in some manner so as to produce a desired end product or result. All the components together must be analogous to components of a single assembly or be parts of a complete machine, or they must constitute a functional unit. Our precedent has not extended liability to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage. We are not persuaded that we should extend that liability. Damages on such items would constitute more than what is 'adequate to compensate for the infringement.'").

7.    **Amount of Lost Profits**

Xomed must prove the amount of its lost profits to a reasonable probability. That is, the amount of lost profits damages should not include amounts that are merely speculative.

*Status*:    Disputed

*Source*:    ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.8.

8.    **Reasonable Royalty**

If you find that Xomed is not entitled to lost profit damages for all or some of the sales of Gyrus's irrigating sinus blades, then for those sales of Gyrus's irrigating sinus blades for which you do not award lost profits, you should determine the amount of the reasonable royalty.

*Status*:    Disputed

*Source*:    ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.9.

9.    **What Is a Reasonable Royalty?**

A royalty is an amount of money that someone pays a patent owner to be able to use the invention recited by the claims.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be when the 957 patent issued, which is September 25, 2001. You should assume that Gyrus and Xomed knew at that time such things as the level of sales and profits that Gyrus would make using the invention. You should also assume that Xomed was willing to grant Gyrus a license to  use the patented invention and that Gyrus was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Xomed and Gyrus would consider in setting the amount Gyrus should pay.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.  Whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty.

2.  Royalties paid by Gyrus or by others for patents comparable to the 957 Patent.

3.  Whether the license is exclusive or non-exclusive, and whether there are territorial restrictions or restrictions as to whom the product may be sold.

4.  Whether or not Xomed had a policy of licensing or not licensing the patent.

5.  Whether or not Xomed and Gyrus are competitors.

6.  Whether being able to use the patented invention helps in making sales of other products or services.

7.  The duration of the patent and the term of the license.

8.  The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

9.  The advantages and benefits of using the patented invention over products or processes not claimed in the 957 Patent.

10. The nature of the patented invention and the character of the commercial embodiment of the invention.

11. The extent of Gyrus's use of the patented invention and the value of that use to Gyrus.

12. Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the surgery field for use of patented inventions comparable to the inventions claimed in the 957 Patent.

13. The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Gyrus.

14. Expert opinions as to what would be a reasonable royalty.

15. Taking into account factors 1-14, the amount that a licensor and a licensee would have agreed on, if both had been reasonably and voluntarily trying to reach an agreement.

*Status*:　　Agreed

*Source*:　　ABA/Fed. Cir. Bar Ass'n Model Patent Litigation Jury Instruction 11.19.1; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1990).

Respectfully submitted,

Date: August 24, 2006　　/s/ Darle M. Short
　　　　　　　　　　　　　Darle M. Short
　　　　　　　　　　　　　Md. Bar No.: 791101
　　　　　　　　　　　　　Thomas J. Pardini
　　　　　　　　　　　　　Va. Bar No.: 21135
　　　　　　　　　　　　　Stephen T. Owen
　　　　　　　　　　　　　Va. Bar No.: 42471
　　　　　　　　　　　　　Kristin K. Vidovich
　　　　　　　　　　　　　D.C. Bar No.: 461789
　　　　　　　　　　　　　OLIFF & BERRIDGE, PLC
　　　　　　　　　　　　　277 South Washington Street
　　　　　　　　　　　　　Suite 500
　　　　　　　　　　　　　Alexandria, VA  22314
　　　　　　　　　　　　　Telephone:  (703) 836-6400
　　　　　　　　　　　　　E-mail:  email@oliff.com

Thomas E. Bishop
TANNER BISHOP
One Independent Drive
Suite 1700
Jacksonville, Florida 32202
Telephone: (904) 598 0034
Facsimile:  (904) 598-0395
E-mail:  tbishop@tannerbishoplaw.com

Attorneys for Defendant Gyrus ENT LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **GYRUS ENT LLC'S COMBINED JURY INSTRUCTIONS** was served electronically and by courier upon the below-listed counsel of record on August 24, 2006:

> A. James Anderson
> Marla R. Butler
> Robins, Kaplan, Miller & Ciresi LLP
> 2600 One Atlanta Plaza
> 950 East Paces Ferry Road N.E.
> Atlanta, GA 30326-1119
>
> R. Eric Bilik
> Jeffrey S. York
> McGuireWoods LLP
> Bank of America Tower
> 50 North Laura Street, Suite 3300
> Jacksonville, FL 32202-3661
>
>
> /s/ Darle M. Short
> Attorneys for Defendant Gyrus ENT LLC